1  Jean-Jacques Cabou (Bar No. 022835)
   PERKINS COIE LLP
2  2901 North Central Avenue, Suite 2000
   Phoenix, Arizona 85012-2788
3  Telephone:  602.351.8000
   Facsimile:  602.648.7000
4  JCabou@perkinscoie.com
   DocketPHX@perkinscoie.com
5
   Emma A. Andersson (CA Bar No. 260637)
6  (*pro hac vice pending*)
   ACLU CRIMINAL LAW REFORM PROJECT
7  125 Broad Street, 18th Floor
   New York, New York 10004
8  Telephone:  212.284.7365
   eandersson@aclu.org
9
   Victoria Lopez (Bar No. 330042)**
10 Daniel J. Pochoda (Bar No. 021979)
   Darrell Hill (Bar No. 030424)
11 ACLU FOUNDATION OF ARIZONA
   P. O. Box 17148
12 Phoenix, Arizona 85011-0148
   Telephone:  602.650.1854
13 vlopez@acluaz.org
   dpochoda@acluaz.org
14 dhill@acluaz.org

15 **Admitted pursuant to Ariz. Sup. Ct. R. 38(f)

16 *Attorneys for Plaintiff Rhonda Cox*

17              UNITED STATES DISTRICT COURT

18                  DISTRICT OF ARIZONA

19 Rhonda Cox,
                                        No.
20              Plaintiff,

21        v.                            **COMPLAINT**

22 Lando M. Voyles, Pinal County Attorney; Paul
   Babeu, Pinal County Sheriff; Detective Samuel
23 Hunt, Deputy Pinal County Sheriff; Amanda
   Stanford, Pinal County Clerk of the Superior   (Jury Trial Demanded)
24 Court; Craig Cameron, Deputy Pinal County
   Attorney,
25
                Defendants.
26

27

28

**INTRODUCTION**

Plaintiff Rhonda Cox brings this civil rights action to redress the unconstitutional application of Arizona's Civil Asset Forfeiture Laws, Arizona Revised Statutes §§ 13-4301 to 13-4315 (the "Forfeiture Laws"), to her and to prevent these facially unconstitutional laws from being used against her in the future.

1. Defendants Lando M. Voyles, Pinal County Attorney; Paul Babeu, Pinal County Sheriff; and Amanda Stanford, Pinal County Clerk of the Superior Court are each sued in their official capacities.

2. Defendants Craig Cameron, Deputy Pinal County Attorney, and Detective Samuel Hunt, Deputy Pinal County Sheriff, are sued in their individual capacities and only because of the unlawful seizure described in Claim Six.

3. Rhonda Cox has lived in Arizona with her family for 10 years. She works in sales for a shade company and she has four children and four grandchildren. In April 2013, she purchased a used pickup truck for $6,000 (the "Truck"). The Truck was paid for by her, titled in her name, and she carried its insurance.

4. Sometimes, Rhonda lent the Truck to her son Chris.

5. In August 2013, Rhonda's son drove the Truck to a parking lot at a store, where he was contacted by deputies of the Pinal County Sheriff's Department. The deputies were investigating the earlier theft of a white Tonneau Cover (a flat cover which covers the back of a pickup truck) and a white truck hood.

6. Eventually, Defendant Babeu's deputies concluded that the Tonneau Cover and the hood that were attached to Rhonda's Truck had been stolen. They arrested Rhonda's son and decided to seize the Truck along with the stolen items on it.

7. Rhonda learned by telephone that her son was being arrested and went to the scene. By the time she got there, her son was gone. The only person left on the scene was one deputy who was sitting in his car guarding Rhonda's Truck.

8. Rhonda approached the deputy and explained that the Truck was hers, asking if she could get it back. The deputy curtly told Rhonda that she would never be

getting the Truck back.  He gave her no other information about what was happening to her son or to her property.  Rhonda pleaded with the deputy that she had nothing to do with the alleged crime that occurred.  He simply said "too bad."  In the words of the Forfeiture Laws, Rhonda told him that she was an "innocent owner" and that she "did not know and could not reasonably have known of the act or omission or that it was likely to occur."  *See* A.R.S. § 13-4304(4)(C).

9.     Later that day, Rhonda received a telephone call from a different deputy who was interrogating her son.  The deputy told Rhonda that her son was being uncooperative and threatened that things would be worse for her son if he did not immediately confess.  Rhonda wisely advised her son to ask for an attorney.  She then explained to the deputy on the telephone that she had nothing to do with the alleged crime and that the Truck belonged to her and not to her son.  The deputy told her that they were initiating forfeiture proceedings against the Truck and that she would never get it back.

10.     It did not matter to the deputies that Rhonda was an innocent owner entitled to get her Truck back.  And that did not matter to Defendant Voyles and his prosecutors.  Both the County Attorney's Office and the Sheriff's Office stood to financially benefit from seizing and forfeiting the Truck.

11.     Under the Forfeiture Laws, all of the revenue received from the forfeiture of the Truck would go to the County Attorney's Office and/or to the Sheriff's Office.

12.     With the help of Defendant Voyles's deputy, Defendant Cameron, [1] the Sheriff's department, despite knowing that the Truck belonged to Rhonda and despite knowing that she had absolutely nothing to do with the theft, initiated proceedings against the Truck under the Forfeiture Laws seeking to forfeit the Truck.

13.     Rhonda, unable to afford a lawyer, tried to fight the seizure on her own through a series of phone calls, emails, and filings in court.  Eventually, threatened by

---

[1]     Pursuant to A.R.S. § 13-4301(1), Defendant Voyles is designated as the "Attorney for the [S]tate" in forfeiture proceedings like the case against the Truck.

Defendant Cameron with having to pay the State's attorneys' fees if she lost her fight for the Truck, she gave up.

14.     Arizona's Forfeiture Laws are unconstitutional on their face and unconstitutional as applied to the seizure, proceedings against, and ultimate forfeiture of Rhonda's Truck.

15.     Specifically, Rhonda challenges and seeks to correct the violations by the Defendants of her rights under the First, Fourth, Fifth, and Fourteenth Amendments of the United States Constitution.

16.     The Forfeiture Laws infringe the Fifth and Fourteenth Amendments' guarantee of Due Process by providing an unconstitutional financial incentive for Defendants Voyles and Babeu (and their employees and agencies) (collectively the "Law Enforcement Defendants") to seize, proceed against, and ultimately forfeit Rhonda's property (and the property of others).

17.     In fighting to regain her Truck, even though she is an innocent owner, and even though she lacked the assistance of counsel, Rhonda was caught in a Kafkaesque predicament where, bizarrely, she bore the burden of proving that she was entitled to get the Truck back.  The State did not have to prove that Rhonda did anything wrong—let alone criminal—in order to keep the Truck.

18.     The Forfeiture Laws further infringe the Fifth and Fourteenth Amendments by providing that if Rhonda fights the forfeiture of her Truck and loses, she not only loses the Truck, but is further punished by being liable for the attorneys' fees and for the costs of investigation of the State.

19.     Put differently, on top of authorizing the seizure of her Truck even though she did nothing wrong, the Forfeiture Laws then punish Rhonda for standing up for herself and her property in court.

20.     Furthermore, the Forfeiture Laws twice place an unconstitutional burden on Rhonda's rights under the First Amendment to "petition the government for redress of

grievances."   First, the Forfeiture Laws unconstitutionally burden her rights by taxing them with the attorneys' fee liability provision discussed in the preceding Paragraph.

21.   Second, the Forfeiture Laws violate the First Amendment by requiring Rhonda to pay a $304 filing fee simply for the right to bear the burden of proof in the action to defend her property.

22.   Through these and other unconstitutional means, the Forfeiture Laws have created a system in which few people like Rhonda can afford to take the risk of defending their property.   And Defendants have profited, and continue to profit, wildly through this system.

23.   According to the most recent Forfeiture Monies Report compiled and submitted by the Arizona Criminal Justice Commission as of the date of this filing:  the Attorney General Master Account held $16,653,523; the Attorney General Individual Account held $15,423,990; the County Attorney Master/Pooled Account held $43,233,148; and Local Agencies held $9,508,052.[2]

24.   All of this money is controlled only by people and agencies, including the Law Enforcement Defendants, whose direct pecuniary interest in these monies is created by the Forfeiture Laws and results in a perverse, unfair, unconstitutional incentive to seize and forfeit as much money and property as possible as a means to ensure a slush fund available to them with little or no oversight.

25.   This powerful, unconstitutional financial incentive for the Law Enforcement Defendants encouraged them to make sure that Rhonda failed in her attempt to reclaim her Truck.

26.   This same incentive also ensures that she will fail in the event her property is seized pursuant to the Forfeiture Laws in the future—for instance the next time a friend or family member borrows her vehicle.

---

[2]   Ariz. Crim. Justice Comm'n, Forfeiture Monies Summary (2014), *available at* http://www.azcjc.gov/ACJC.Web/pubs/finance/fy2015/2ndQtrFY15RICOReport.pdf.

**NATURE OF THE ACTION**

27.    This is an action brought pursuant to 42 U.S.C. § 1983 and § 1988 to redress violations of Rhonda's rights under the First, Fourth, Fifth, and Fourteenth Amendments to the United States Constitution.

28.    This action seeks declaratory, injunctive, and other equitable relief against Defendants Voyles, Babeu, Stanford and their successors, as well as their officers, employees, agents, and all persons acting in cooperation with them, under their authority and/or supervision, at their direction, or under their control in the enforcement, application and use of the Forfeiture Laws.

29.    This action seeks nominal monetary damages against Defendants Cameron and Hunt for violation of Rhonda's Fourth Amendment rights.

30.    An actual, definite, and concrete controversy exists between Rhonda and the Law Enforcement Defendants concerning the seizure of, forfeiture of, and wrongful retention of her Truck (or of profits from the sale of her Truck).

31.    An actual, definite, and concrete controversy exists between Rhonda and Defendant Stanford concerning the imposition and collection of an unconstitutional fee in order to contest the seizure and attempted forfeiture of her Truck.

32.    An actual, definite, and concrete controversy exists between Rhonda and Defendants Cameron and Hunt concerning the unlawful seizure and retention of the Truck.

33.    The controversy between Rhonda and the Defendants will be resolved through the declaratory, injunctive, monetary, and other equitable relief sought by Rhonda.

34.    In this action, Rhonda seeks a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202 on the grounds that the Forfeiture Laws are unconstitutional on their face and as applied to Rhonda in this case because they:

       i.    Provide an unconstitutional pecuniary incentive to the Law Enforcement Defendants, who participate in the seizure of, adjudication of, and

1   prosecution of property seized for forfeiture while at the same time

2   deriving substantial financial benefit from those official actions;

3   ii.   Deny her due process by imposing on her liability for the State's

4   attorneys' fees if she is unsuccessful in challenging the State's case

5   against her property;

6   iii.   Deny her due process by imposing upon her a fee (constituting a

7   significant percentage of the value of her property) to contest the seizure

8   and attempted forfeiture of her property in court;

9   iv.   Impose, via the required filing fee, a tax on her right to petition the

10   government for return of her property; and

11   v.   Impose, via the attorneys' fee liability provision, a further tax and

12   enormous disincentive, on her right to petition the government for return

13   of her property.

14   35.   Rhonda also seeks further relief pursuant to 42 U.S.C. § 1983, specifically:

15   i.   A permanent injunction enjoining the Law Enforcement Defendants

16   from employing the Forfeiture Laws so long as:

17   1.   They receive a direct financial benefit from the profits of

18   forfeitures under the Forfeiture Laws;

19   2.   The Forfeiture Laws require Rhonda to be liable for the

20   State's attorneys' fees in any unsuccessful attempt to reclaim

21   property owned by her and seized under the Forfeiture Laws;

22   ii.   A permanent injunction enjoining Defendant Stanford from charging a

23   fee to Rhonda for the right to contest the seizure of her property;

24   iii.   An order disgorging from the Law Enforcement Defendants the profits

25   from the forfeiture and sale of Rhonda's Truck;

26   iv.   An order awarding damages in the amount of $1 for Defendants Hunt

27   and Cameron's unlawful seizure for forfeiture of her Truck.

28

36.     And pursuant to 42 U.S.C. § 1988, Rhonda seeks an award of her reasonable attorneys' fees and costs.

### PARTIES

37.     Plaintiff Rhonda Cox is a citizen and resident of San Tan Valley, Arizona, where she has lived with her family for 10 years.  Rhonda and her husband have four children and four grandchildren.  For almost five years, Rhonda has worked in sales for a shade company in Mesa, Arizona.  Prior to that, she worked in sales for a small family-owned construction company that went out of business during the recession.  In 2009, Rhonda returned to school to earn a paralegal degree.

38.     Defendant Lando M. Voyles is, and at all times relevant to the Complaint was, the elected Pinal County Attorney.  In his capacity as the Pinal County Attorney, he is the "Attorney for the [S]tate" as designated by the Forfeiture Laws.  He is responsible for his Office's seizure of property under Arizona's Forfeiture Laws and for the administration, prosecution, and disposition of cases, including the case against Rhonda's Truck, brought in Pinal County pursuant to the Forfeiture Laws.  He is ultimately responsible for the conduct of the employees in his Office, including the Deputy County Attorneys involved in Rhonda's forfeiture case.

39.     Defendant Craig Cameron is, or was at all times relevant to the Complaint, a Deputy Pinal County Attorney.  He and Defendant Samuel Hunt were directly responsible for authorizing the seizure of and prosecution of the Truck.

40.     Defendant Paul Babeu is the elected Pinal County Sheriff.  In his capacity as the Pinal County Sheriff, he is responsible for his Office's seizure of property under Arizona's Forfeiture Laws, including the Truck seized from Rhonda by his deputies.  He is ultimately responsible for the conduct of the employees in his Office, including those deputies involved in Rhonda's forfeiture case.

41.     Defendant Samuel Hunt was, at all times relevant to the Complaint, a deputy of the Pinal County Sheriff's Office.  He issued the notice of seizure and forfeiture on the Truck after consulting with Defendant Cameron.

42. Defendant Amanda Stanford is the elected Clerk of the Pinal County Superior Court. In her capacity as the Clerk of the Pinal County Superior Court, she is responsible for her Office's policies and procedures regarding fees charged to claimants, including Rhonda, who seek to contest the seizure of property in cases filed in Defendant Stanford's Court. Defendant Stanford is ultimately responsible for the conduct of the employees in her Office, including those employees involved in Rhonda's forfeiture case.

## JURISDICTION AND VENUE

43. Because this action arises under the Constitution and laws of the United States, this Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 2201.

44. Venue is proper in the District of Arizona pursuant to 28 U.S.C. § 1391 because the Defendants reside within the District of Arizona.

## FACTUAL ALLEGATIONS

### The Truck, the Seizure, and the Flawed Notice of Seizure and Uncontested Forfeiture.

45. Rhonda bought the Truck in April 2013 for $6,000 dollars and, in July of that year, she paid $1,307 to put a new engine in it.

46. As many parents do, she "allowed [her] son to use the vehicle as a way to better himself and get on his feet until such time he could purchase his own vehicle." [Exhibit ("Ex.") 1 (Petition for Remission or Mitigation)]

47. Evidently, Chris drove the Truck on the night of August 1 into the morning of August 2, 2013. Rhonda had no idea he drove the Truck that night until she learned that her son had been contacted by Mr. Babeu's deputies.

48. On August 2, 2013, while Deputy Traynor interrogated Chris, Defendant Hunt, in consultation with Defendant Cameron, issued Chris a "Notice of Property Seizure & Pending Uncontested Forfeiture" ("NOPS") for the Truck. [Ex. 2 (NOPS dated Aug. 2, 2013)]

49. The NOPS, the document which was legally required to begin the case against the Truck and without which the State would have no case, appears to be a

boilerplate, fill-in-the-blank document, which is partially printed and partially filled in by hand.

50.    The NOPS contains numerous fatal flaws that would require a court to dismiss the case.

    i.   The Seizing Agency is falsely identified as the Pinal County Narcotics Task Force ("PCNTF"), *even though there are no narcotics involved in this case and even though the PCNTF had no involvement in the case*.

    ii.   The NOPS states that a claim is required pursuant to A.R.S. § 13-4300(F), *but no such statute or subsection exists*.

    iii.   The NOPS alleges that forfeiture is authorized pursuant to A.R.S. §§ 13-2301 *et seq.*, and 13-3401 *et seq.*, *but these statutes pertain to racketeering and narcotics and have nothing to do with this case*.

    iv.   The NOPS alleges that forfeiture is authorized "particularly" by A.R.S. § 13-1506.A.1, *but that citation is to Burglary in the Third Degree, an offense for which forfeiture is not authorized by law*.

    v.   The NOPS alleges that "suspected contraband, more particularly described as *burglary*" is the basis for forfeiture.  Of course, that makes no sense.  Burglary is not contraband.

    vi.   The NOPS contains an affidavit of service on which the name of the person allegedly served *is blank*.

[*Id.*]

51.    The NOPS stated that "Uncontested Forfeiture" was being offered to anyone wishing to challenge the seizure.

52.    Defendant Voyles, through Defendant Cameron, sent Rhonda by mail a "Notice of Pending Uncontested Forfeiture" on August 28, 2013 (the "August 28th Notice").  [Ex. 3]

53.    The August 28th Notice was substantially similar to the NOPS, including by listing the narcotics and racketeering statutes, even though no such conduct is at issue

here, and by listing the basis of forfeiture as A.R.S. § 13-1506.A.1, which does not authorize forfeiture.

### Rhonda attempted to work with Defendant Voyles's Office to get the Truck back, which is rightfully hers.

54.     After the Deputy at the scene and the Deputy on the telephone both told Rhonda that she would never get her Truck back on the day of the seizure, she contacted the County Attorney's Office to ask them to return her Truck.

55.     Rhonda tried to explain that the Truck was hers, that she had no knowledge of any wrongful activity, and that she would like the Truck back.

56.     Defendant Voyles' Office, and Defendant Cameron in particular, denied that Rhonda was entitled to get her Truck back.

57.     After her initial informal attempts to get her Truck back failed, Rhonda tried to follow the "uncontested forfeiture" procedures set forth in the NOPS and the August 28th Notice.

58.     This process purports to offer an out-of-court procedure whereby Rhonda was offered a chance to persuade Defendants Voyles and Cameron to return her property.

59.     In uncontested forfeiture, Defendant Voyles is both the prosecutor and the profiteer, unilaterally empowered to decide whether to return the Truck and also a primary financial beneficiary of the Truck's ultimate forfeiture.

60.     Rhonda filed a Petition for Mitigation, as provided for by law, on September 13, 2013. [Ex. 1]

61.     The Petition for Mitigation explained and provided evidence that Rhonda owned, exclusively paid for, and insured the Truck.

62.     The Petition for Mitigation explained that Rhonda has no knowledge of any unlawful activities being conducted with the Truck.

63.     The Petition for Mitigation explained that, despite the bizarre, false statements in the NOPS and the August 28th Notice to the contrary, there were no allegations in the case about narcotics or racketeering.

64. The Petition for Mitigation stated, correctly, that Rhonda is "an innocent owner" of the Truck, that she did not know, and could not have known, about any illegal acts involving the Truck, and is entitled to its return. *See* A.R.S. § 13-4304(4)(C).

65. And the Petition for Mitigation cited various Arizona laws supporting its request and attached numerous exhibits verifying these claims.

66. Unsurprisingly Defendant Voyles, who was entitled by law to direct the proceeds generated from the forfeiture of the Truck to his agency or to Defendant Babeu's agency, refused to return the Truck.

**Rhonda, alone and without a lawyer, goes to court against the State.**

67. On September 27, 2013, Defendant Voyles, through Defendant Cameron, rejected Rhonda's Petition for Mitigation, sending her the State's Declaration of Forfeiture, Remission, or Mitigation (the "Declaration of Forfeiture"). [Ex. 4][3]

68. As justification for their wrongful refusal to return the Truck, Defendants Voyles and Cameron stated that because the Truck was purchased "for family use" and "[t]he family purpose doctrine applies in the [S]tate of Arizona" "it is hereby declared that the alleged interest of Rhonda Cox is forfeit." [*Id*. at 2]

69. The "family purpose doctrine" is a principle of tort liability for registered owners of cars in automobile accidents. It has never been, and cannot constitutionally be, applied to a forfeiture case.

70. In fact, the Forfeiture Laws expressly provide for a *bona fide* registered owner like Rhonda to have their property returned if they establish they "did not know and could not reasonably have known of the act or omission or that it was likely to occur." A.R.S. § 13-4304(4)(c).

71. Upon receiving the Declaration of Forfeiture, Rhonda emailed Defendant Cameron, explaining that even though he was refusing to return the Truck she was

---

[3] Curiously, while the NOPS claimed that "burglary" was the predicate act giving rise to forfeiture, the Declaration of Forfeiture recited that "theft" was the basis. This change in theories was never explained or justified by the State.

"hoping [to] at least get" some "personal items" out of it.  Specifically, she explained, "some of the tools in the truck belonged to [her] deceased grandfather and have sentimental value."  [Ex. 5 (Email from R. Cox to C. Cameron, dated Oct. 23, 2013)]

72.     In response to this email, Defendant Cameron refused to consider returning the tools, writing:  "I am sorry to hear your son used tools with sentimental value to commit a theft."  [*Id.*]

73.     Defendant Cameron then filed the Complaint seeking forfeiture of the Truck.

74.     Rhonda, without a lawyer, filed a timely Answer, again challenging the State's claims for forfeiture.

75.     To file her Answer, Rhonda was required to pay a $304 filing fee to the Pinal County Clerk of Court.

## Rhonda abandons her case under direct threat of being charged the State's attorneys' fees.

76.     Rhonda and Defendant Cameron then proceeded to exchange limited discovery.  Following the exchange of Rule 26.1 disclosure statements, Defendant Cameron, on March 19, 2014, served on Rhonda Requests for Admission.

77.     Rhonda was confused by the Requests and their many pages of "instructions," frustrated that Defendant Cameron was using information against her that she had shared with him in a good faith effort to get her Truck back, and exhausted of trying to defend her property without the assistance of counsel.  She wrote to Defendant Cameron on April 2, 2014, letting him know that she was unable to proceed and stating "the lay person does not stand a chance over someone [like Defendant Cameron] who does this everyday."  [Ex. 6 (Email from R. Cox to C. Cameron, dated Apr. 2, 2014)]

78.     The next day, April 3, 2014, Defendant Cameron wrote back.  In his response, Defendant Cameron called Rhonda a "straw owner," claimed, erroneously, that as a "straw owner" Rhonda did "not have standing to bring a claim," reiterated the

1    nonsensical argument that the "family purpose doctrine" defeated her claim for the

2    Truck's return, and called her attempt to get her Truck back "disingenuous."  [*Id.*]

3        79.    His response went on to state that "[u]nder A.R.S. 13-4314(G) the State is

4    due attorney fees from a party who does not prove they are entitled an exception to

5    forfeiture. . . . You may wish to file a motion of withdrawal of the claim to drop the case."

6    [*Id.*]  Put differently, he made clear that if she persisted in her efforts to have the Truck

7    returned, he would seek to have the State's attorneys' fees assessed against her.

8        80.    Indeed, A.R.S. § 13-4314(F) is a one-way attorneys' fee provision that

9    directs courts to order unsuccessful claimants to pay the State's attorneys' fees.  So

10   claimants lose the property that is seized and forfeited and, on top of that, have to pay for

11   the State's lawyer.  But if a claimant hires her own lawyer and is successful in getting her

12   property back, the law does not require the court to order the State to pay her attorneys'

13   fees.

14       81.    Defendant Cameron has used the attorneys' fee provision to threaten other

15   claimants as well.  In an email dated June 19, 2014, Defendant Cameron wrote to a

16   claimant's attorney:  "I have started to ask for fees in every case.  Its[sic] more for the

17   education of the judge who is new to her position/young.  I suspect you didn't consider

18   attorney fees when you took the case.  By asking for fees, I'm reinforcing to the criminal

19   defense bar the risks associated with making a claim in a forfeiture case.  I'm sure you

20   may disparage me to your criminal defense brethren for asking for fees, but they will

21   know the risks and rewards better."  [Ex. 7 (Email from C. Cameron to "Nathan," dated

22   June 19, 2014)]

23       82.    On April 14, 2014, Rhonda filed a "Motion to Withdrawal Claim."  In that

24   Motion, Rhonda stated that she was withdrawing her claim "based on the likelihood of the

25   [S]tate winning the case and the fear of additional financial loss [from having attorneys'

26   fees awarded against her]."  [Ex. 8]

27       83.    Rhonda believed that if she continued her fight and lost, the State's costs

28   and attorneys' fees would have greatly exceeded the value of the Truck.

84.    Rhonda felt bullied, threatened, and lied to during this process.  Her experience with Defendants Voyles's and Babeu's deputies has left her distrustful and fearful of the very law enforcement officials who are supposed to protect innocent people like her.

85.    After Rhonda gave up her fight, the State applied for and received an order forfeiting the Truck to the State.  The Truck and its contents were forfeited and awarded to the Pinal County Sheriff's Department.

86.    Upon information and belief, following the forfeiture of the Truck, it was sold at auction by Defendant Babeu or those acting with his authority and the proceeds were distributed as prescribed by law, including to Defendant Voyles's Office.

**The Origin of the Forfeiture Laws.**

87.    The Forfeiture Laws under which the Truck was seized and ultimately forfeited worked against Rhonda at every turn.

88.    The Forfeiture Laws were first enacted in 1986.  They were drafted by an *ad hoc* committee composed solely of prosecutors and sponsored by the Arizona Prosecuting Attorneys Advisory Council ("APAAC").

89.    The purpose of Arizona's Forfeiture Laws is "removing the economic incentive to engage in racketeering, reducing the financial ability of racketeers to continue to engage in crime, preventing unfair business competition by persons with access to crime proceeds, compensating victims of racketeering, and reimbursing the State for the costs of prosecution."  *See State ex rel. Napolitano v. Gravano*, 204 Ariz. 106, 113, 60 P.3d 246, 253 (Ct. App. 2002).

90.    Upon information and belief, despite the intended purpose of the Forfeiture Laws to combat large-scale racketeering, the vast majority of cases brought under the Forfeiture Laws are low-dollar seizures alleging low-level criminal conduct.

91.    For example, the Pinal County Treasurer's records for August 1, 2013 through August 31, 2013 include numerous forfeitures by Defendants Voyles and Babeu worth less than $1,000, and many worth less than the $304 filing fee required for a

1    claimant to fight a forfeiture case in court.  [Ex. 9 (Pinal County Treasurer Monthly

2    Statement) at 1-3]  The Treasurer's records from November and December 2013 [*id.* at 4-

3    8] and February 2014 show the same pattern [*id.* at 9-11].

4         92.    Despite being on the books for over three decades, these laws, in large part

5    because of the perverse incentives for law enforcement and substantial obstacles to

6    individuals defending their property, have been rarely challenged.

7         93.    In addition to the fact that few defendants have the wherewithal to challenge

8    seizures under the Forfeiture Laws, the State can always settle or drop a particular case in

9    which a challenge exists in order to keep the statutes from being seriously attacked in

10   court.

11   **Arizona law enforcement agencies and the Law Enforcement Defendants directly**
**profit from, depend on the profits from, and direct the spending of profits from**
12   **seizures for forfeiture, including the seizure of the Truck.**

13        94.    The Forfeiture Laws have created a lucrative system in which police and

14   prosecutors are heavily incentivized to seize and forfeit property.  Indeed, A.R.S. § 13-

15   4315(A) and (B)(2), provide that "[a]ny property, including all interests in property,

16   forfeited to the state under this title shall be transferred as requested by the attorney for the

17   state to the seizing agency or to the agency or political subdivision employing the attorney

18   for the state . . ." and "[i]f the property declared forfeited is an interest in a vehicle, the

19   court shall order it forfeited to the local, state or other law enforcement agency seizing the

20   vehicle for forfeiture or to the seizing agency."

21        95.    As a result, Law Enforcement Defendants are able to supplement their

22   budgets without any legislative oversight.

23        96.    The APAAC advertised its May 31, 2013 Forfeiture Training by telling its

24   members that "an asset forfeiture practice that supplements other law enforcement

25   activities provides an opportunity that is unique among governmental agencies—the direct

26   augmentation of the agency's budget through the performance of its designated function."

27   [Ex. 10 (Email from E. Iniguez, dated Apr. 25, 2013)]

28

97.     In addition to touting forfeiture's budget "augmentation" benefits to its members, APAAC also knows that abuses of this system are common.  In a forfeiture ethics training, APAAC encouraged its members:

"Don't Ruin Forfeiture for All of Us"

- When your bosses can't find any money in their budget they get depressed.
- When they get depressed they tell you to start doing forfeiture cases.
- When you start doing forfeiture cases you go to a Forfeitures seminar.
- When you go to a Forfeitures seminar you feel like a winner.
- When you feel like a winner you go back to your jurisdiction and just start seizing everything in sight.
- When you just start seizing everything in sight you screw things up and lose everything.
- When you screw things up and lose everything you ruin forfeitures for all of us.
- Don't ruin forfeitures for all of us.  Get the purpose of this seminar and follow an educated, ethical and professional forfeiture practice.

[Ex. 11 (APAAC Training Presentation) at 7]

98.     Though ethical use of Arizona's Forfeiture Laws may be encouraged in trainings, these laws simultaneously create powerful incentives to self-deal and "just start seizing everything in sight" and grant expansive power to do so.

99.     Rhonda's experience demonstrates why "Arizona's civil asset forfeiture laws are in need of serious reform."  *See* Marian R. Williams, Ph.D., *et al.*, Poli¢ing for Profit, The Abuse of Civil A$$et Forfeiture, Institute for Justice, 47 (Mar. 2010), *available at* http://www.ij.org/images/pdf_folder/other_pubs/assetforfeituretoemail.pdf.

100.    Unlike proceeds from forfeitures in many other states, which are paid into the state treasury or other legislatively-supervised funds, all the proceeds from Arizona state forfeitures go to the law enforcement agencies involved in seizing and prosecuting the case.

101.    Law enforcement agencies are dependent on forfeiture monies for their continuing operations, paying for everything from traditional law enforcement equipment to office supplies, furniture, office refreshments, and even toilets.

102.   In the words of one Deputy County Attorney and Bureau Chief in Pima County "[w]hen the economy tanked and we lost a good part of our budget, we could absolutely not survive without [revenue from forfeiture]."   [Ex. 12 (Lupita Murillo, "RICO funds help Southern Arizona law enforcement agencies," KVOA News Tucson (June 19, 2013))]

103.   In 2013, APAAC conducted an informal "survey as to the uses for which RICO funds are applied" in response to "criticism amongst the chattering classes regarding RICO funds."  Among the responses received, one County Attorney wrote: "All of my RICO funds are used to supplement the salaries of my employees and office operating expenses.  This use of my RICO funds has become necessary to avoid furloughs and/or layoffs as the county has cut back on staffing due to budget cuts."  [Ex. 13 (Email from E. Rheinheimer to K. MacEachern, dated Mar. 13, 2013)]

104.   The Arizona Department of Public Safety (AZ DPS) apparently relies entirely on forfeiture monies to fund its bomb squad, S.W.A.T. team, and hazardous materials unit.

105.   "The State Bomb Squad is not an appropriated funded unit, and relies solely on RICO funding to continue performing its high-risk and ever expanding mission."  [Ex. 14 (Application Arizona DPS RICO Funds ("DPS RICO App."), Bomb Squad Unit FY 2014) at 2]

106.   The same is true of AZ DPS's S.W.A.T. team: "DPS S.W.A.T. is not an appropriated funded unit, and relies on RICO funding in order to continue performing its high-risk mission."  [Ex. 15 (DPS RICO App., S.W.A.T. TEAM FY2014) at 1]

107.   AZ DPS has also used forfeiture monies to pay for immunizations and other medical expenses for thousands of employees [Ex. 16 (DPS RICO App., Safety and Loss Prevention Grant)] and for its entire drug testing program of employees and potential new hires [Ex. 17 (DPS RICO App., Drug-Free Workplace (DFW) Program)].

108.   Forfeiture money is regularly used to pay overtime and is sought for specific employees.

109.   AZ DPS works closely with the Law Enforcement Defendants.   For example, AZ DPS "currently assigns two full time narcotics detectives to a task force managed by [Defendant Babeu's] Pinal County Sheriff's office.  DPS is responsible for the full costs of the two detectives assigned and as such needs to provide replacement equipment on a regular basis.  Currently there is an immediate need for two vehicles, at least one being a heavy-duty 4X4 pickup truck and the other a full size SUV."  [Ex. 18 (DPS RICO App., Pinal Narcotics – Vehicle Replacement)]

110.   That task force is known as the Pinal County Narcotics Task Force (the "PCNTF"), which is governed by the "Intergovernmental Agreement for Agency Participation in the [PCNTF]."  [Ex. 19]  The PCNTF is headquartered at and supervised by Defendant Babeu's Office.

111.   Section 10 of the Agreement explicitly discusses the seizure of assets, and notes that seized assets are "first allocated to Task Force requirements."  Remaining assets from seizures for forfeiture are distributed to the participating law enforcement agencies, including those led by Defendants Babeu and Voyles.  [*Id.* at 4]

112.   Arizona law enforcement agencies also use the profits of forfeitures to fund "pet projects," including many that provide favorable exposure to the Law Enforcement Defendants amongst their constituents.

113.   Defendant Voyles issued a press release on September 4, 2013, touting the community groups (i.e., the constituents whose votes he seeks) to which his Office had given $188,000 in forfeiture monies.  [Ex. 20 (Press Release, Office of Pinal County Attorney, "Pinal County Attorney Lando Voyles announces $188K awarded to semiannual RICO Community Outreach Funding recipients" (on file with author) (Sept. 4, 2013))]

114.   As detailed in a critical audit report by the Pinal County Office of Internal Audit of the forfeited funds controlled by Defendants, Defendant Voyles gave money to,

various sports teams, the County of Salt Lake, something called "Maricopa 1st Ward,"[4] and a company called "Maricopa Dance and Fitness, LLC."  [Ex. 21 (Kate Witek, Pinal County Office of Internal Audit, Report to the Board of Supervisors, County Attorney Anti-Racketeering Fund Audit (Sept. 2014)) at App. II]

115.   Defendant Voyles's personal home security system is paid for by forfeiture monies.  [Ex. 22 (Pinal County Spending Records, QuickZoom Report 7/1/2013 - 9/30/2013)]

116.   Defendant Voyles pays personnel costs of employees in his Office with forfeiture monies.  [Ex. 23 (Pinal County State Account Statement ("PC Acct. Statement"))]

117.   Defendant Voyles pays for the retirement contributions of employees in his Office with forfeiture monies.  [*Id.*]

118.   Defendant Babeu, his agency, and causes he supports, also benefit financially from seizures and forfeitures.

119.   The Arizona Public Safety Foundation, Inc. is a 501(c)(3) organization originally named the "Pinal County Sheriff's Office Justice Foundation, Inc." (the "Foundation").  It was incorporated in 2007.  [Ex. 24 (Ariz. Corp. Comm'n Articles of Incorporation (May 2007))]

120.   Originally, the Foundation had its offices at 971 N. Jason Lopez Circle, Bldg. C., in Florence, Arizona.  That is the same address as the Pinal County Sheriff's Office.  Now, the Foundation's "address" is a private P.O. Box.

121.   The Foundation and the Sheriff's Office have been, and remain, closely linked.

122.   The current treasurer of the Foundation is a Pinal County Sheriff's deputy and advisor to the Sheriff's Explorer program.  Several members of the Foundation's

---

[4]       Upon information and belief, this is a religious organization.

1    Board of Directors are employees of, or were employees of, the Sheriff's Office.  Another

2    Board Member owns a crime scene clean-up company.

3        123.    According to IRS filings, in 2013 the Foundation received $290,007, or

4    86.62% of its funding, from the Pinal County Sheriff's Office's forfeiture fund.   It

5    received another $44,512, or 13.30%, from other Sheriff's Office sources.  The remaining

6    0.28% of Foundation income was interest earned.  [Ex. 25 (IRS Form 990 (2013))]

7        124.    In 2012, the Foundation received $229,835, or 99.38% of its funding, from

8    forfeiture funds from the Pinal County Sheriff's Office.  Again, the only other revenue

9    received was from interest.

10       125.    In 2013 and 2014, the Foundation received hundreds of thousands of dollars

11   from the Pinal County Attorney's forfeiture money.[5]  In its reporting to the Arizona

12   Criminal Justice Commission, the County Attorney's Office categorized this money as

13   "Gang & Substance Abuse Prevention & Education Program."[6]

14       126.    Oddly for a group that appears to get nearly all of its money from Defendant

15   Voyles's County Attorney's Office and Defendant Babeu's Sheriff's Office, the

16   Foundation's stated purpose is "to promote and assist in fund raising activities for

17   volunteer groups associated with the Pinal County Sheriff's Department."  [Ex. 24]  At a

18   minimum, it seems that by funneling money to a private group which buys things for him

19   and his department, Defendant Babeu is able to avoid procurement laws and other

20   transparency regulations which usually apply to government purchasing.

21       127.    IRS filings, while often too general to discern how the Foundation's money

22   is being spent, reveal that since its inception money has been spent on things like:

23   ─────────────────────

24       [5]      **$20,000** on July 9, 2013 [Ex. 26 (PC Acct. Statement (July 2013)) at 2];
     **$26,500** on October 17, 2013 [Ex. 27 (PC Acct. Statement (Oct. 2013)) at 4]; **$25,000** on
25   December 5, 2013 [Ex. 28 (Pinal County RICO State Account Fund 184 ("PC RICO
     Fund") (Dec. 2013)) at 1)]; **$16,525.75** on December 19, 2013 [*id.* at 3]; **$68,025.75** in the
26   second quarter of FY 2014 [Ex. 29 (Az. Crim. Justice Comm'n, Forfeiture Monies Report
     Quarterly, Pooled Account Summary ("Az. CJC Forfeiture Report") (2nd Qtr. FY14))];
27   **$244,700** in the third quarter of 2014 [Ex. 30 (Az. CJC Forfeiture Report (3rd Qtr. FY
     14))]; **$16,500** in April 2014 [Ex. 31 (PC RICO Fund (Apr. 2014)) at 2]; **$122,053** on
28   May 29, 2014 [Ex. 32 (PC RICO Fund (May 2014)) at 2].
         [6]      *See e.g.*, Exs. 29-30.

i.   "Automatic Rifles for deputies to have for illegals involved in drug related situations;"

ii.   "Supplies;"

iii.   "Police Dogs;"

iv.   "Horses;" and "feed."

[Ex. 33 (IRS Form 990 (2011)) at 2, 10]

128.   The Forfeiture Laws motivated and enabled the Law Enforcement Defendants to seize and forfeit property with minimum resistance from Rhonda, who, despite being the lawful owner of the Truck and despite using her best efforts to get it back, was still unsuccessful.

129.   Arizona's Forfeiture Laws stack the deck against claimants and incentivize law enforcement to maximize their profits at the expense of Arizonans' constitutional rights.

130.   This racket has to stop.  And Rhonda's rights must be vindicated.

## CLAIM ONE

### DUE PROCESS FACIAL CHALLENGE

**Violation of the Fifth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983 Based on Improper Financial Motivation of Law Enforcement Defendants**

**(Rhonda against Law Enforcement Defendants (Voyles and Babeu))**

131.   Rhonda incorporates by reference Paragraphs 1 through 130 above as though fully set forth herein.

132.   The Due Process Clause of the Fifth and Fourteenth Amendments to the United States Constitution prohibits Defendants from depriving Rhonda, and any person, of her property without due process of law.

133.   42 U.S.C. § 1983 provides for suit against the government for constitutional violations.

134.   Pursuant to A.R.S. § 13-4315, the Law Enforcement Defendants are financially incentivized to seize and forfeit as much property as they can from whomever

they can.  All, or substantially all, of the property seized and forfeited is returned to the Law Enforcement Defendants for their own minimally-supervised use.

135.    The Law Enforcement Defendants are reliant on proceeds from civil forfeitures to keep their agencies running, including as described above.

136.    This financial interest in the conduct of, and decisions made, in law enforcement duties violates Due Process, as determined by the United States Supreme Court in, among other cases, *Tumey v. Ohio*, 273 U.S. 510 (1927).

137.    Declaratory, injunctive, and other equitable relief is necessary to stop Defendants' enforcement of the unconstitutional statute; without such relief the enforcement of this statute will continue unlawfully.

## CLAIM TWO

### DUE PROCESS FACIAL CHALLENGE

**Violation of the Fifth and Fourteenth Amendments to the
United States Constitution and 42 U.S.C. § 1983 Based on Improper
Financial Motivation in Uncontested Forfeiture**

**(Rhonda against Defendant Voyles)**

138.    Rhonda incorporates by reference Paragraphs 1 through 137 above as though fully set forth herein.

139.    The Due Process Clause of the Fifth and Fourteenth Amendments to the United States Constitution prohibits Defendant from depriving Rhonda, and any person, of her property without due process of law.

140.    42 U.S.C. § 1983 provides for suit against the government for constitutional violations.

141.    Defendant Voyles, as the "Attorney for the [S]tate" is the prosecutor of, the decision-maker for, and the financial beneficiary of, seizures and forfeitures processed by means of "uncontested forfeiture" pursuant to A.R.S. § 13-4309.

142.    Uncontested forfeiture is unconstitutional, in addition to the other reasons set forth in this Complaint, because in uncontested forfeiture Defendant Voyles and his

1  deputies retain their pecuniary interest in the seized property while also being directly

2  responsible for deciding whether to return it to the claimant.

3      143.    This conflict of interest, which offends not just the appearance but also the

4  reality of fairness, violates due process as determined by the United States Supreme Court

5  in, among other cases, *Tumey v. Ohio*, 273 U.S. 510 (1927).

6      144.    Declaratory, injunctive, and other equitable relief is necessary to stop

7  Defendants' enforcement of the unconstitutional statute; without such relief the

8  enforcement of this statute will continue unlawfully.

9                            **<u>CLAIM THREE</u>**

10          **FIRST AMENDMENT AND DUE PROCESS FACIAL CHALLENGE**

11      **Violation of the First, Fifth, and Fourteenth Amendments to the United States
        Constitution and 42 U.S.C. § 1983 Based on**
12          **Attorneys' Fees and Costs of Investigation Liability**

13                      **(Rhonda against Defendant Voyles)**

14      145.    Rhonda incorporates by reference Paragraphs 1 through 144 above as

15  though fully set forth herein.

16      146.    The First Amendment of the United States Constitution protects, among

17  other things, the right to petition the government for a redress of grievances.

18      147.    The Due Process Clause of the United States Constitution protects, among

19  other things, a person like Rhonda from being deprived of her property without a timely,

20  meaningful, fair procedure.

21      148.    42 U.S.C. § 1983 provides for suit against the government for constitutional

22  violations.

23      149.    The exclusive means available to an innocent property owner, like Rhonda,

24  to seek return of her property is to follow the procedures set forth in the Forfeiture Laws.

25      150.    Rhonda's petition for remission, claim, answer, other filings, and

26  communications to the State in this case are "petitions" within the meaning of the First

27  Amendment.

28

151.    Rhonda's efforts to recover her property, through participation in both uncontested and contested forfeiture, necessarily involved causing the Law Enforcement Defendants to perform further work and spend further time on the case involving the seizure of the Truck.

152.    Rhonda desisted from her attempts to recover her property only because of the threat of having a judgment entered against her for the State's attorneys' fees and costs pursuant to A.R.S. § 13-4314(F).

153.    Such fees and costs, if the case had gone to trial, would have exceeded the value of the Truck, perhaps many times over.

154.    A.R.S. § 13-4314(F) thus imposes an unconstitutional burden, disincentive, and tax upon Rhonda's right to petition the State to redress her grievances and return her Truck.

155.    A.R.S. § 13-4314(F) thus also fails to provide a constitutionally adequate process by which to challenge the seizure and forfeiture of the Truck.

156.    Declaratory, injunctive, and other equitable relief is necessary to stop Defendants' enforcement of the unconstitutional statute; without such relief the enforcement of this statute will continue unlawfully.

## CLAIM FOUR

### FIRST AMENDMENT AND DUE PROCESS FACIAL CHALLENGE

**Violation of the First, Fifth, and Fourteenth Amendments to the
United States Constitution and 42 U.S.C. § 1983 Based on Filing Fee**

**(Rhonda against Defendant Stanford)**

157.    Rhonda incorporates by reference Paragraphs 1 through 156 above as though fully set forth herein.

158.    The First Amendment of the United States Constitution protects, among other things, the right to petition the government for a redress of grievances.

159.   The Due Process Clause of the United States Constitution protects, among other things, a person like Rhonda from being deprived of her property without a timely, meaningful, fair procedure.

160.   42 U.S.C. § 1983 provides for suit against the government for constitutional violations.

161.   The Law Enforcement Defendants paid no fee to file, in Pinal County Superior Court, the action seeking to forfeit the Truck.

162.   On the other hand, in order to contest the seizure of the Truck, Rhonda was forced to pay a filing fee of $304, which is among the highest fees charged by the Clerk of the Superior Court, to Defendant Stanford.

163.   In many cases, the cost of the fee is greater than the value of the property. The charging of such a fee further burdens Rhonda's petitioning rights under the First Amendment and erects a further financial disincentive to litigate her claim in violation of Due Process.

164.   Declaratory, injunctive, and other equitable relief is necessary to stop Defendant's enforcement of the unconstitutional statute; without such relief the enforcement of this statute will continue unlawfully.

## **CLAIM FIVE**

### **DUE PROCESS FACIAL CHALLENGE**

**Violation of the Fifth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983 Based on Cumulative Combination of Failures**

**(Rhonda against Defendants Voyles, Babeu, and Stanford)**

165.   Rhonda incorporates by reference Paragraphs 1 through 164 above as though fully set forth herein.

166.   The Due Process Clause of the Fifth and Fourteenth Amendments to the United States Constitution prohibits Defendants from depriving Rhonda, and any person, of her property without due process of law.

167.   42 U.S.C. § 1983 provides for suit against the government for constitutional violations.

168.   The Forfeiture Laws violate Rhonda's rights under the First, Fifth, and Fourteenth Amendments as set forth above.

169.   The Forfeiture Laws set forth the exclusive means by which Rhonda can seek the return of the Truck.   The Forfeiture Laws first provide a "process" of "uncontested forfeiture" whereby Defendant Voyles is the decision-maker, prosecutor, and profiteer.

170.   After unsuccessful uncontested forfeiture, the Forfeiture Laws then provide a "process" in which Defendant Voyles has a financial incentive to aggressively pursue seizures and forfeitures by any means necessary, in which Rhonda is charged a fee for litigating, in which Rhonda, without the assistance of counsel, bears the burden of proof, and in which Rhonda is overtly threatened with further financial ruin for participating in the only "process" available to seek redress for the wrongful seizure of her property.  Such a process is not "meaningful" as required by the Constitution.

171.   The Forfeiture Laws provide Rhonda with a process so rigged against the pursuit of her rights, that the cumulative effect of the individual constitutional failings set forth above amounts to a further, separate violation of her right to Due Process.

172.   Declaratory, injunctive, and other equitable relief is necessary to stop Defendants' enforcement of the unconstitutional statute; without such relief the enforcement of this statute will continue unlawfully.

## CLAIM SIX

### AS APPLIED FOURTH AMENDMENT VIOLATION

**Violation of the Fourth Amendment to the United States Constitution and 42 U.S.C. § 1983 Based on Illegal Seizure of Truck**

**(Rhonda against Defendants Hunt and Cameron)**

173.   Rhonda incorporates by reference Paragraphs 1-172 above as though fully set forth herein.

174.   The Fourth Amendment to the United States Constitution prohibits Defendants from unreasonably seizing Rhonda's property.

175.   42 U.S.C. § 1983 provides for suit against the government for constitutional violations.

176.   As described above, including in Paragraph 50, the Notice of Seizure and the Notice of Forfeiture are defective in that they claim the Truck was seized pursuant to A.R.S. § 13-1506; forfeiture is not authorized for violations of § 13-1506.

177.   As described above, including in Paragraph 67, the Declaration of Forfeiture [Ex. 4], without prior notice to Rhonda, and without any revisions to the Notices of Seizure, purported to seek forfeiture of the Truck pursuant to A.R.S. § 13-1802, Theft, for which forfeiture *would* be authorized by law.

178.   The seizure of the Truck for forfeiture was without lawful basis, as the statute listed in the Notice of Seizure and pursuant to which the Truck was seized does not authorize forfeiture.

179.   By seizing and retaining the Truck without lawful basis, Defendants Hunt and Cameron violated Rhonda's rights under the Fourth Amendment of the United States Constitution from the time the NOPS was issued until the Court's order of forfeiture was entered.

## CLAIM SEVEN

### AS APPLIED DUE PROCESS AND FIRST AMENDMENT CHALLENGE

**Violation of the First, Fifth, and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983**

**(Rhonda against Defendants Voyles, Babeu, and Stanford)**

180.   Rhonda incorporates by reference Paragraphs 1 through 179 above as though fully set forth herein.

181.   The Forfeiture Laws are not only unconstitutional on their face for the reasons stated elsewhere in this Complaint, but also as applied to Rhonda in the seizure, attempted recovery of, and forfeiture of the Truck.

182.   Declaratory, injunctive, and other equitable relief is necessary to stop Defendants' enforcement of the unconstitutional statute; without such relief the enforcement of this statute will continue unlawfully.

### RELIEF REQUESTED

**WHEREFORE Rhonda:**

1.   Respectfully requests that this Court, pursuant to 28 U.S.C. § 2201, enter a declaratory judgment stating that Arizona's Forfeiture Laws, A.R.S. §§ 13-4301 to 13-4315, facially and as applied to her, violate the First, Fifth, and Fourteenth Amendments to the United States Constitution because they unfairly burden her right to challenge the seizure of her property and fail to ensure due process by providing an improper financial incentive to Law Enforcement Defendants.

2.   Further requests that this Court enter an order enjoining enforcement of Arizona's Forfeiture Laws, A.R.S. §§ 13-4301 to 13-4315.

3.   Further requests that this Court enter an order: (a) disgorging from the Law Enforcement Defendants all proceeds received from the sale of the Truck and (b) disgorging from Defendant Stanford the filing fee she received from Rhonda.

4.   Further requests an award of nominal damages of $1 for violation of her Fourth Amendment rights as set forth in Claim Six.

5.   Further requests that this Court award the costs of this suit, including reasonable attorneys' fees, pursuant to 42 U.S.C. § 1988, and all further relief to which she may be entitled.

/ / /

/ / /

1    Dated:  July 22, 2015                    **PERKINS COIE LLP**

2

3                                             By: */s/ Jean-Jacques Cabou*
                                                  Jean-Jacques Cabou
                                                  2901 North Central Avenue, Suite 2000
4                                                 Phoenix, Arizona 85012-2788

5                                             Emma A. Andersson (CA Bar No. 260637)
                                                  (*pro hac vice pending*)
6                                             ACLU CRIMINAL LAW REFORM
                                                  PROJECT
7                                             125 Broad Street, 18th Floor
                                                  New York, New York 10004
8                                             Telephone:  212.284.7365
                                                  eandersson@aclu.org

9
                                              Victoria Lopez (Bar No. 330042)**
10                                            Daniel J. Pochoda (Bar No. 021979)
                                                  Darrell Hill (Bar No. 030424)
11                                            ACLU FOUNDATION OF ARIZONA
                                                  P. O. Box 17148
12                                            Phoenix, Arizona 85011-0148
                                                  Telephone:  602.650.1854
13                                            vlopez@acluaz.org
                                                  dpochoda@acluaz.org
14                                            dhill@acluaz.org

15                                            **Admitted pursuant to Ariz. Sup. Ct.
                                                  R. 38(f)
16
                                              *Attorneys for Plaintiff Rhonda Cox*
17

18

19

20

21

22

23

24

25

26

27

28