*Rhonda Cox v. Lando M. Voyles, et al.*

| **Exhibit Index** | |
|---|---|
| **Tab** | **Document** |
| 1 | Rhonda Cox's Petition for Remission or Mitigation, undated |
| 2 | Notice of Property Seizure & Pending Uncontested Forfeiture, dated August 2, 2013 |
| 3 | Notice of Pending Uncontested Forfeiture, dated August 28, 2013 |
| 4 | State's Declaration of Forfeiture, Remission, or Mitigation, filed September 27, 2013 |
| 5 | Email from R. Cox to C. Cameron, dated October 23, 2013 |
| 6 | Email from R. Cox to C. Cameron, dated April 2, 2014 |
| 7 | Email from C. Cameron to "Nathan," dated June 19, 2014 |
| 8 | Motion to Withdrawal Claim, dated April 14, 2014 |
| 9 | Pinal County Treasurer Monthly Statements, date ranges 8/1/2013 - 8/31/2013, 11/1/2013 - 11/30/2013, 12/1/2013 - 12/31/2013, and 2/1/2014 - 2/28/2014 |
| 10 | Email from E. Iniguez, dated April 25, 2013 |
| 11 | APAAC Training Presentation, undated |
| 12 | Lupita Murillo, "RICO funds help Southern Arizona law enforcement agencies," KVOA News Tucson (June 19, 2013) |
| 13 | Email from E. Rheinheimer to K. MacEachern, dated March 13, 2013 |
| 14 | Application Arizona DPS RICO Funds, Bomb Squad Unit FY 2014 |
| 15 | Application Arizona DPS RICO Funds, S.W.A.T. Team FY 2014 |
| 16 | Application Arizona DPS RICO Funds, Safety and Loss Prevention Grant |

| Tab | Document |
|-----|----------|
| 17 | Application Arizona DPS RICO Funds, Drug-Free Workplace (DFW) Program |
| 18 | Application Arizona DPS RICO Funds, Pinal Narcotics – Vehicle Replacement |
| 19 | Intergovernmental Agreement for Agency Participation in the Pinal County Narcotics Task Force, dated September 22, 2010 |
| 20 | Press Release, Office of Pinal County Attorney, "Pinal County Attorney Lando Voyles announces $188K awarded to semiannual RICO Community Outreach Funding recipients" (Sept. 4, 2013) |
| 21 | Kate Witek, Pinal County Office of Internal Audit, Report to the Board of Supervisors, County Attorney Anti-Racketeering Fund Audit (Sept. 2014) |
| 22 | Pinal County Spending Records, QuickZoom Report 7/1/2013 - 9/30/2013 |
| 23 | Pinal County State Account Statement, dated September 2013 |
| 24 | Ariz. Corp. Comm'n Articles of Incorporation (May 2007) for Pinal County Sheriff's Office Justice Foundation, Inc. |
| 25 | Arizona Public Safety Foundation, Inc. IRS Form 990 (2013) |
| 26 | Pinal County State Account Statement, dated July 2013 |
| 27 | Pinal County State Account Statement, dated October 2013 |
| 28 | Pinal County RICO State Account Fund 184, dated December 2013 |
| 29 | Az. Crim. Justice Comm'n, Forfeiture Monies Report Quarterly, Pooled Account Summary (2nd Qtr. FY 14) |
| 30 | Az. Crim. Justice Comm'n, Forfeiture Monies Report Quarterly, Pooled Account Summary (3rd Qtr. FY 14) |
| 31 | Pinal County RICO State Account Fund 184, dated April 2014 |
| 32 | Pinal County RICO State Account Fund 184, dated May 2014 |
| 33 | Pinal County Justice Foundation, Inc. IRS Form 990 (2011) |

# Exhibit 1

# Petition for Remission or Mitigation

To:    Pinal County Attorney
Asset Forfeiture Unit
P.O. Box 887
Florence, AZ 85132

<div align="center">

Pinal County Sheriff's Office DR # 130802044, PCA # 18-2013311
Property Seized:  2004 Chevy Colorado
AZ Plate BAZ2888, VIN 1GCCS196048170533
Date Seized: August 2, 2013
Seizing Agency:   Pinal County Sheriff's Office

</div>

I, Rhonda L. Cox, claimant, requests remission or mitigation of the forfeiture in the above mentioned case. In support of my petition I state the following:

1.  I reside at 4380 E Sierrita Rd. San Tan Valley, AZ 85143.  Please send all future mailings to this address.

2.  The Seizing Agency is the Pinal County Sherriff's office.  The date of the seizure was August 8, 2013, and the seizure took place in San Tan Valley, Arizona.

3.  I received Notice of Pending Uncontested Forfeiture on or August 31, 2013. Notice is attached as Exhibit A.

4.  The property seized is a 2004 Chevy Colorado Pick Up Truck, AZ Plate BAZ2888, VIN 1GCCS196048170533.

5.  As explained below I, Rhonda L. Cox am the legal owner of the 2004 Chevy Colorado Pick Up Truck.

6.  On or about April 13, 2013 I purchased the 2004 Chevy Colorado from a seller off Craig's List.

7.  The seller signed and notarized the Arizona Certificate of Title and exchanged the title and the 2004 Chevy Colorado for $6,000 cash.

8.  On or about April 17, 2013 I registered the 2004 Chevy Pick Up Truck with the Arizona Department of Motor Vehicles as noted on the Arizona Certificate of Title . Arizona Certificate of Title is attached as Exhibit B.

9.  I no longer have the name and address of the seller however, the previous Arizona Certificate of Title number was 6T39012105010, Issue Date 04/14/2012, Previous Film Number M1056T3904 as noted on current Arizona Certificate of Title. (Exhibit B)

10. The 2004 Chevy Colorado was purchased for family use. The truck is used for hauling recreational vehicles, for me to use when needed and for my son and daughter to drive.

11. On or around June 21, 2013 the engine my 2004 Chevy Colorado threw a rod an needed to be replaced. On July 9, 2013 I purchased an engine through my Pay Pal account from Eiss Brothers, Inc for the amount of $1,307.25. The engine was shipped on July 16, 2013 and delivered on or around July 29, 2013. The engine was installed by my son Christopher Clark, completed on evening of August 1, 2013.

12. My son, Christopher Clark, has not made any financial contribution the 2004 Chevy Colorado in any way and holds no interest in the vehicle.

13. Property was seized from my son Christopher Clark.

14. The Notice of Pending Uncontested Forfeiture dated Aug 28, 2013 states property was seized from my son Christopher Clark for the alleged violations ARS 13-2301 et.seq., 13-3401 et.seq., particularly A.R.S. 13-2310 et seq., 13-3408 et. Seq., 13-1506 A1 (underlying offense).

15. To the best of my knowledge, my son Christopher Clark has not been charged with offenses relating to ARS 13-2301 et.seq., 13-3401 et.seq., particularly A.R.S. 13-2310 et seq., 13-3408 et. Seq.

16. As to the alleged offenses Christopher Clark has been or may be charged with, particularly the charge 13-1506 A1, I did not know and could not have reasonably known this act would occur.

17. To my knowledge the 2004 Chevy Colorado never left the driveway of my home from evening around 11:30 on August 1, 2013 until the sometime the following morning after I left for work at 6:30 AM on August 2, 2013.

18. My son, Christopher Clark, had driven the 2004 Chevy Colorado many times and to my knowledge did not commit any offenses while using the vehicle un-other than civil traffic.

I am an innocent owner who had no knowledge and could have not reasonably known my 2004 Chevy Colorado would potentially be used in a crime. I allowed my son to use the vehicle as a way to better himself and get on his feet until such time he could purchase his own vehicle. The vehicle was never intended to belong to him and in fact was intended more for the use of hauling recreational vehicles and for my daughter to use once she obtained her drivers license. If the vehicle is seized it is I, the innocent owner who will be out the value of the vehicle and essentially punished. As per ARS 13-4304.4C I respectfully request remission or mitigation of the forfeiture and that the 2004 Chevy Colorado be returned to me as soon as possible.

# Exhibit 2

CASE# 130802044

## NOTICE OF PROPERTY SEIZURE & PENDING UNCONTESTED FORFEITURE

This is formal NOTICE that the property described below has been SEIZED FOR FORFEITURE by the State of Arizona, pursuant to ARS 13-2301, et seq., 13-3401 et seq., and 13-4301 et seq. This is also formal NOTICE OF PENDING FORFEITURE by the Attorney for the State making uncontested forfeiture is available, pursuant to ARS 13-4309. The Attorney for the State is PINAL COUNTY ATTORNEY, Asset Forfeiture Team, P.O.Box 887, Florence, Arizona 85232, phone (520) 866-6271. The seizing agency is the Pinal County Narcotics Task Force.

THE FOLLOWING PROPERTY ALLEGED BY THE STATE TO BE SUBJECT TO FORFEITURE WAS SEIZED ON: THE 2 DAY OF August ,2013, WITHIN PINAL COUNTY, ARIZONA.

{ }   United States Currency in the approximate amount of $_____._____. Spell out_____
_____. Dollars and _____ cents.
☒   Year 04 Make/Model Chevy_____ Registration:_____ /State_____ .
Vehicle Identification Number 1GCCS1960481705333 , Including all property within vehicle.
{ }   Other property seized: _____

THE ESTIMATED VALUE of the above described property is $_____ .

Anybody claiming ownership of an interest in all or part of the property described above **must file within thirty (30) days** of service of this notice either a Petition for Remission of Mitigation with the Attorney for the State or may file a Judicial Claim with the appropriate court. Any Petition of Claim must comply with all requirements of ARS 13-4311 (E). if you file a Petition for Remission or Mitigation, the original must be TIMELY received by the Attorney for the State and a copy sent to the Seizing Agency. If you file a Judicial Claim, you must send a copy to the Attorney for the State and to the Seizing Agency, but the original must be TIMELY filed in the appropriate Court, Pursuant to ARS 13-4300 (F) and by law, no extension of time may be granted. In most circumstances, the **Pinal County Superior Court is the appropriate court.**

ARS 13-4311 (E) requires the claim or petition to be signed by the claimant under penalty of perjury and shall set forth all of the following: the name of the claimant and the property for which a claim is being made; the address where the claimant will accept future mailings from the court or attorney for the state; the nature and extent of the claimants interest in the property; the date, the identity of the transferor and the circumstances of the claimants acquisition of the interest in the property; the specific provisions of chapter 39 (Forfeiture) relied on in asserting that the property is not subject to forfeiture; all facts supporting each such assertion; any other facts supporting the claim; and the precise relief sought.

**IF NO TIMELY PETITION OR CLAIM IS FILED, THE PROPERTY DESCRIBED ABOVE WILL BE FORFEITED TO THE STATE OF ARIZONA WITHOUT FURTHER NOTICE TO YOU.**

The Alleged violation is ARS 13-2301 et seq., ARS 13-3401 et seq., and particularly ARS 13-1502.A.1 (cite statute of any underlying offense) involving suspected contraband, more particularly described as Burglary_____ with an approximate weight of  N/A ,~~including any contraband containers.~~

Dated this 2 day of August_____ , 20 13, and signed on behalf of the Attorney for the State, Pinal County Attorney. His Deputy Craig Cameron who was contacted on this date at 1645 hrs gave authorization for me to sign on his behalf.

_____          S. Hunt 1559 PCSO
(Authorized Officer's Signature)          (Officer's Printed name, Badge # and Department)

### PROOF OF SERVICE
On the 2 day of Aug/01 , 20 13, I personally served, by hand delivering a copy of the above "Notice of Property Seizure & Pending Uncontested Forfeiture", to each of the following:

Name:_____   Place of Service: Hunt Hwy & Az Farms Time: 1755 hrs
Name:_____   Place of Service:_____   Time:_____
Name:_____   Place of Service:_____   Time:_____

_____          Samuel Hunt 1559 PCSO
(Officer's Signature)                      (Officer's Printed Name, Badge # and Department)

Exhibit A

# Exhibit 3

## NOTICE OF PENDING UNCONTESTED FORFEITURE

**TO:**   Rhonda Cox
4380 E. Sierrita Road
San Tan Valley, AZ 85143

**Re:**   **Pinal County Sheriff's Office, DR# 130802044, PCA # 18-2013311**

Cv 201302162

YOU ARE HEREBY GIVEN NOTICE that the property described below has been seized by the State of Arizona for forfeiture, pursuant to A.R.S. §§ 13-2301 *et seq.*, 13-4301 *et seq.* The seizing agency is **Pinal County Sheriff's Office**. YOU ARE ALSO HEREBY GIVEN NOTICE of pending forfeiture by the Attorney for the State and you are hereby given notice that uncontested forfeiture is available, pursuant to A.R.S. § 13-4309. The Attorney for the State is the **PINAL COUNTY ATTORNEY**, Asset Forfeiture Unit, P.O. Box 887, Florence, AZ 85132, phone (520) 866-6271.

ANY PERSON ASSERTING A LAWFUL INTEREST in all or part of the property described below may file within thirty (30) days of this notice **either** a Petition for Remission or Mitigation with the Attorney for the State **or** may file a Judicial Claim with the appropriate court, but any Petition or Claim must comply with all requirements of A.R.S. § 13-4311(E) & (F). IF NO PETITION OR CLAIM IS TIMELY FILED, THE PROPERTY DESCRIBED BELOW WILL BE FORFEITED TO THE STATE OF ARIZONA WITHOUT FURTHER NOTICE TO YOU, pursuant to A.R.S. § 13-4301 *et seq.*; and by law, no extension of time may be granted. THE FOLLOWING SEIZED PROPERTY IS ALLEGED BY THE STATE TO BE SUBJECT TO FORFEITURE (Descriptions are completed, if applicable):

[  ]   United States Currency in the approximate amount of and /100 Dollars ($);

[ X ]   Other property seized: 2004 Chevrolet Colorado, Reg. (State/Plate) AZ/BAZ2888, V.I.N. 1GCCS196048170533.

THE ESTIMATED VALUE of the above-described property is $4,000.00. Seizure occurred on August 2, 2013, within Pinal County, Arizona. The alleged violation is A.R.S. §§ 13-2301 *et seq.*, 13-3401 *et seq.*, and particularly A.R.S. §13-2310 *et seq.*, § 13-3408 *et seq.*, **§13-1506A1 (cite statute of any underlying offense).**

IF YOU FILE A PETITION FOR REMISSION OR MITIGATION, you must **timely** send the original to the Attorney for the State and a copy to the Seizing Agency. IF YOU FILE A JUDICIAL CLAIM, you must send a copy to the Attorney for the State and to the Seizing Agency, but the original must be **timely** filed in the appropriate Court. In most circumstances, the appropriate court is the Superior Court of the State of Arizona in and for the County of Pinal. (Please note: if you file a Judicial Claim in Superior Court and the Judge later determines that your claim belongs in a different court, the Attorney or the State hereby agrees to non-prejudicial transfer of the case to the appropriate court.)

UNDER CERTAIN CIRCUMSTANCES, a person or entity may file an application under A.R.S. § 13-4310(B) to obtain a provisional return of the property pending the outcome of the judicial determination of forfeiture. If such a hearing is requested, copies of the application must be mailed to the Attorney for the State and the Seizing Agency.

DATED this 2 6 day of August, 2013, by the undersigned duly authorized Deputy County Attorney on behalf of and signed with the authorization of the Seizing Agency, the Attorney for the State, the PINAL COUNTY ATTORNEY.

M. LANDO VOYLES
PINAL COUNTY ATTORNEY

Craig Cameron
Deputy County Attorney

## CERTIFICATE OF MAILING

On the 28 day of August, 2013, I mailed (certified, return receipt requested and by first class mail) a copy of the above "Notice of Pending Uncontested Forfeiture" to the following:

Rhonda Cox
4380 E. Sierrita Road
San Tan Valley, AZ  85143


_Barbara A. Ludwig_
Barbara A. Ludwig


\cc\aforfeit\18-2013311 ntc of pend uncon forf

# Exhibit 4

**M. LANDO VOYLES**
**PINAL COUNTY ATTORNEY**
By:      Craig Cameron (013176)
         Deputy County Attorney
P.O. Box 887
Florence, AZ  85132
Telephone:  (520) 866-6341
Fax:  (520) 866-6521
E-mail:  craig.cameron@pinalcountyaz.gov

Attorney for Petitioners

FILED PINAL COUNTY
SUPERIOR COURT
CHAD A. ROCHE

SEP 2 7 2013

## SUPERIOR COURT OF THE STATE OF ARIZONA

## COUNTY OF PINAL

| | |
|---|---|
| In the Matter of:<br><br>2004 Chevrolet Colorado, Reg. AZ/BAZ2888;<br><br><br>Seized by Pcso<br>DR # 130802044 | Case No. CV-201302162<br><br>PCA #18-2013311<br><br>**DECLARATION OF FORFEITURE**<br>**REMISSION OR MITIGATION**<br><br>(Pursuant to A.R.S. §13-4314)<br><br>Honorable Bradley M. Soos |

Pursuant to A.R.S. § 13-4309, the attorney for the State declares the above property, particularly described in the caption herein, forfeited and the Petition for Remission or Mitigation is denied.

On or about August 2, 2013, the property was seized as evidence from Christopher Clark, the son of Rhonda Cox. Notice of Property Seizure and Pending Uncontested Forfeiture was served on Rhonda Cox on August 28th, 2013, via certified mail. A Petition for Remission or Mitigation was received by the Pinal County Attorney's Office on September 17th, 2013, from Rhonda Cox.

Pursuant to A.R.S. § 13-4309(3)(a), the attorney for the State has inquired into whether the claimed interest in the seized property by the claimant, Rhonda Cox, is subject to forfeiture, and into the facts and circumstances surrounding the petition. The attorney for the State notes

18-2013311\Declaration of Forfeiture          - 1 -

in the petition the truck "was purchased for family use," and the petitioner "would not have allowed him to do so if I had known or could have reasonably known of any intentions to commit criminal offenses." The family purpose doctrine applies in the state of Arizona.

The attorney for the State also has reviewed Pinal County Sheriff's Office Report No. 130802044. After considering the petition, the attorney for the State hereby declares that the property is subject to forfeiture pursuant to A.R.S. §§ 13-4301, *et seq.*, 13-2314, and 13-3401, *et seq.* It is further declared that the interest of the claimant, Rhonda Cox, is not subject to remission or mitigation in that the claimant has failed to establish that the claimant's interest is excepted from forfeiture pursuant to A.R.S. § 13-4304.

Based upon the foregoing, it is hereby declared that the alleged interest of Rhonda Cox is forfeit and the petition for remission or mitigation is denied.

An owner or interest holder in any property declared forfeited who has *timely* filed a petition, may file a claim as described by A.R.S. § 13-4311(e) and (f) in the Superior Court within thirty (30) days of the mailing of this Declaration.

If a qualifying Petitioner fails to file a claim in the court within thirty (30) days after the mailing of this Declaration of Forfeiture, this declaration becomes final and the property will be dealt with accordingly, and as provided in A.R.S. §§ 13-4314 and 13-4315, including return to the petitioner to the extent indicated by this declaration.

Election not to file a claim in the court concludes this action in accordance with the terms of this declaration. It does not compromise the state's right to bring or pursue any other action, civil or criminal, permitted by law. If the petitioner elects to file a claim seeking a judicial proceeding, this declaration is void and shall be regarded as a rejected offer to compromise this *in rem* action. The state thereafter will be free to seek any remedy provided by law in forfeiture actions.

No bond is required as a condition of making a claim; however, A.R.S. § 13-4314(F) provides:

> the court shall order any claimant who fails to establish that his entire interest is exempt from forfeiture under § 13-4304 to pay the costs of any claimant who establishes that his entire interest is exempt from forfeiture under § 13-4304, and the State's costs and

expenses of the investigation and prosecution of the matter, including reasonable attorney's fees.

DATED this __25__ day of September, 2013.

M. LANDO VOYLES
PINAL COUNTY ATTORNEY

By: _____
Craig Cameron
Deputy County Attorney

Original of the foregoing
filed this __27__ day of
September, 2013, with:

Chad A. Roche
Clerk of the Superior Court
P.O. Box 2730
Florence, AZ 85132

Copy of the foregoing
mailed by certified mail
this __25__ day of
September, 2013, to:

Rhonda Cox
4380 E. Sierrita Road
San Tan Valley, AZ  85143-3266

Barbara A. Ludwig

# Exhibit 5

## Craig Cameron

| | |
|---|---|
| **From:** | Craig Cameron |
| **Sent:** | Wednesday, October 23, 2013 11:21 AM |
| **To:** | 'Rhonda Cox' |
| **Cc:** | Tad Davis |
| **Subject:** | RE: PCA# 18-2013311 |

RE: Christopher Clark.

Thank you for your e-mail.

I want to be clear as to the proceedings. A Declaration for Forfeiture was issued and sent to you on September 27th. The declaration means I will not be releasing the truck without an order from the court directing me to do so. You have until November 4th to file a claim with the Court to pursue the truck. Since the tools were in the truck and your son used at least some of the tools to perpetrate the theft, the tools will be forfeited too. You can also file a claim to seek return of the tools only. I am sorry to hear your son used tools with sentimental value to commit a theft.

R/

Craig Cameron

**From:** Rhonda Cox [mailto:▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮]
**Sent:** Wednesday, October 23, 2013 10:50 AM
**To:** Craig Cameron
**Subject:** PCA# 18-2013311

Hello Mr. Cameron ,

  I am writing you in reference to your PCA# 18-2013311.  I have received your Declaration of Forfeiture Remission or Mitigation denying my petition. I understand I am not getting my vehicle back.  I am wondering if I am able to get the personal items not attached to the vehicle out of it. All of the documents I have list the truck but not the contents. Please let me know.  I have already lost my vehicle for something I had nothing to do with I am hoping I can at least get the contents out of it.  As I mentioned previously some of the tools in the truck belonged to my deceased grandfather and have sentimental value.

Respectfully,

*Rhonda Cox*

1

# Exhibit 6

I am concerned about your statement that you should not have spoken to me. What should be coming forth is the truth. It appears from your statement that you feel you should have prevented some relevant fact from being discovered. It would have been revealed anyway.  From viewing the truck there is no doubt the truck was the property of your son and your only involvement is to maintain your name on the title for your son's benefit, for insurance purposes, etc. That's' not unusual for parents to do.   You were nothing more than a straw owner.

A forfeiture case has two sides. One side the State's burden to show the property was being used in a racketeering offence, like theft. The documentation provided and evidence suggested in the request for admissions, illustrates the truck was used to go to the utility yard to steal parts for the truck and then have the parts installed onto the truck. You chose to dispute those facts. Maybe you should have asked your son first.

The second side is the exception to forfeiture for which you have the burden of proof. As stated above you're merely a straw owner, holding title for the benefit of your son. As such a straw owner does not have standing to bring a claim. Even if you did have standing you must show you could not have known of any illegal activity by your son. Your son has a history of shoplifting and other crimes which put you on notice of his character.   The family purpose doctrine which has been raised, imposes a duty on your part to ensure the truck would not be used to facilitate a crime. That is more than simply being unaware of what your son is doing.

Your statement of regret, implying that you would like to have prevented relevant facts from being disclosed reveal your disingenuous purpose of opposing the forfeiture case. Under A.R.S. 13-4314(G) the State is due attorney fees from a party who does not prove they are entitled an exception to forfeiture.

The proper venue to seek return of the tools is in this forfeiture case. You may wish to file a motion of withdrawal of the claim to drop the case.

Sincerely,

Craig Cameron

---

**From:** Rhonda Cox [mailto:rhonda_cox1970@msn.com]
**Sent:** Wednesday, April 02, 2014 10:45 AM
**To:** Craig Cameron
**Subject:** RE: CV 201302162

Mr. Cameron,

   After reading the admissions, I am not going to proceed but, then you knew that.  Attorney's charge to much to help you defend yourself and your property  in a case such as this and the lay person does not stand a chance over someone who does this everyday. I should not have spoke with you and now understand fully why attorneys tell you not to speak to the police.  What do I

need to do to drop the case? Also, is there anything I file in an attempt to get my tools and other personal items out of the vehicle.

Thank you for your help,

*Rhonda Cox*

---

From: Craig.Cameron@pinalcountyaz.gov
To: rhonda_cox1970@msn.com
Subject: RE: CV 201302162
Date: Mon, 31 Mar 2014 19:58:30 +0000

Ms. Cox,

The Request for admission should be sent separately, but attached are the requests.

Thank you,

Craig Cameron

---

**From:** Rhonda Cox [mailto:rhonda_cox1970@msn.com]
**Sent:** Monday, March 31, 2014 11:57 AM
**To:** Craig Cameron
**Subject:** CV 201302162

Hello Mr. Cameron,

   I am in receipt of your letter dated March 19,2014.  In the letter you state you are also enclosing a request for admissions.  The only documents enclosed in the envelope are your letter and the Stipulated Pretrial Schedule.  Can you please e-mail me a copy of the request for admissions? Thank you,

*Rhonda Cox*

# Exhibit 7

**Craig Cameron**

| | |
|---|---|
| **From:** | Leonardo Law Offices <nathan@leonardolawoffices.com> |
| **Sent:** | Thursday, June 19, 2014 9:36 AM |
| **To:** | Craig Cameron |
| **Subject:** | Re: Cruz Forfeiture |
| **Attachments:** | Email Logo.tiff |

I intended my motion to be a motion to dismiss my client's claim against the cash and vacate the hearing with regard to his claim, that's all. I guess I should have been more specific. I can see asking for fees if a person pursues a claim to the end and loses, but it seems counterproductive to go after attorney fees when a person moves to dismiss/withdraw their claim before it is heard. I guess if you are pursuing attorney's fees then maybe I should move to withdraw, which means I will probably have to be present tomorrow after all.

On Jun 19, 2014, at 8:02 AM, Craig Cameron <Craig.Cameron@pinalcountyaz.gov> wrote:

> Nathan,
> First, yes my mistake. Howie Cruz, not ███████████████████████
> ███████████████████████████████████████████████████ Amended
> Response attached.
> But as you can tell I do not object to the claim being withdrawn. But why are you asking to dismiss my case, and prevent me from wrapping things up this Friday by vacating the hearing. I have my officers ready and they will provide the testimony necessary for an order being entered.
> Second, attorney fees will be merely a symbolic victory. Think I'll be able to collect? If you can't track him down, I doubt I'll have better luck. Rarely have the forfeiture attorneys in Arizona asked for fees, but I have started to ask for fees in every case. Its more for the education of the judge who is new to her position/young. I suspect you didn't consider attorney fees when you took the case. By asking for fees, I'm reinforcing to the criminal defense bar the risks associated with making a claim in a forfeiture case. I'm sure you may disparage me to your criminal defense brethren for asking for fees, but they will know the risks and rewards better.   On the flip side, I pride myself that I do not proceed when a claimant can establish they are righteous in their position.
> Should you be requesting to withdraw as counsel instead? If you think you can ethically proceed in a civil matter without your client, go ahead. I would prefer him to be there, he'll by my first witness.
> Craig
>
> **From:** Leonardo Law Offices [mailto:nathan@leonardolawoffices.com]
> **Sent:** Wednesday, June 18, 2014 3:58 PM
> **To:** Craig Cameron
> **Subject:** Cruz Forfeiture
>
> I'm assuming your response is actually to my motion on behalf of Howie Cruz, ████████████
> ████████ (although I hope my assumption is wrong). Do you really have to ask for attorney's fees? If so, I almost feel obligated to continue with the claim. I only filed a motion to dismiss the claim because I've lost contact with my client. It's not necessarily a concession that his claim is invalid, just that I think it will be very difficult to make without him being present. But if it a dismissal could negatively affect him (i.e. attorney's fees), then I almost have to try to pursue the claim in his absence.

&lt;image001.png&gt;

2 E. Congress St., Suite 418
Tucson, Arizona 85701
www.LeonardoLawOffices.com
(520) 314-4125 (office)
(520) 314-4126 (fax)

*WARNING,* this e-mail message (including any attachments) contains information that may be confidential and subject to attorney-client, attorney work product, or other applicable privileges or may constitute non-public information. Forwarding this E-Mail may waive the attorney-client privilege. This E-Mail is intended to be conveyed only to the designated recipient(s). If you are not an intended recipient of this e-mail, please notify the sender by replying to this message and then delete it from your computer system. Use, dissemination, distribution or reproduction of this message by unintended recipients is not authorized and may be unlawful.

&lt;18-339 amend resp.docx&gt;



2 E. Congress St., Suite 418
Tucson, Arizona 85701
www.LeonardoLawOffices.com
(520) 314-4125 (office)
(520) 314-4126 (fax)

*WARNING,* this e-mail message (including any attachments) contains information that may be confidential and subject to attorney-client, attorney work product, or other applicable privileges or may constitute non-public information. Forwarding this E-Mail may waive the attorney-client privilege. This E-Mail is intended to be conveyed only to the designated recipient(s). If you are not an intended recipient of this e-mail, please notify the sender by replying to this message and then delete it from your computer system. Use, dissemination, distribution or reproduction of this message by unintended recipients is not authorized and may be unlawful.

# Exhibit 8

FILED PINAL COUNTY
SUPERIOR COURT
CHAD A. ROCHE

APR 1 4 2014

Name of Person Filing:     Rhonda Cox
In this case I am:          ☐ Petitioner ☒ Respondent
In this case I am:          ☒ Representing Myself (No Attorney), or
If Represented by Attorney, Bar Number:
My Address (if not protected):   **4380 E Sierrita Rd**
City, State, Zip Code:           **San Tan Valley, 85143**
Telephone Numbers:
E-Mail Address

## SUPERIOR COURT OF ARIZONA
## IN PINAL COUNTY

M. Lando Voyles
Pinal County Attorney
_____
Name of Plaintiff or Petitioner

Rhonda Cox
_____
Name of Defendant or Respondent

| Case Number: | CV-201302162 |
|---|---|

Title:   Motion to Withdrawal Claim
In the Matter of Chevrolet Colorado,
REG. AZ/BAZ2888
Seized by PCSO
DR# 130802044
Honorable K.J. Stillwell

## Motion to Withdrawal Claim

Claimant, Rhonda Cox hereby files a motion to withdrawal claim for 2004 Chevrolet Colorado Reg. AZ/BAZ2888 based on the likelihood of the state winning the case and the fear of additional financial loss. I request that each party be responsible for their own costs.

RESPECTFULLY SUBMITTED this 14th day of April, 2014

Rhonda Cox

# Exhibit 9



# Pinal County Treasurer

## Monthly Statement

Date Range: 8/1/2013 to 8/31/2013

| Account | Period | YTD | | |
|---|---|---|---|---|
| 2000021004 | PC Attny Anti-Racketeering Fund | | | |
| Begin Balance: | 2,509,959.24 | 2,526,153.99 | | |
| Income: | 237,500.24 | 252,152.12 | | |
| LOC Advance: | .00 | .00 | | |
| Expense: | (290,893.09) | (321,739.72) | LOC: | .00 |
| LOC Payments: | .00 | .00 | Warrants Outstanding: | (50,923.15) |
| Cash Balance: | 2,456,566.39 | 2,456,566.39 | End: | 2,405,643.24 |

## Monthly Statement Summary

| Source Code | Description | | MTDAmount | YTDAmount |
|---|---|---|---|---|
| 2000021004 PC Attny Anti-Racketeering Fund | | Beginning Balance: | 2,509,959.24 | 2,526,153.99 |
| 21100.41 | Wells Fargo Repo Investment Interest | | 68.56 | 127.74 |
| 21100.43 | Wells Fargo Trust Investment Interest | | 1.41 | 2.86 |
| 21100.46 | Wells Fargo Investment Investment Interest | | .00 | 140.58 |
| 21100.70 | Vining Sparks Investment Interest   237 500.24 — | | 1.09 | 77.91 |
| 21100.80 | Stifel Nicolaus & Company Investment Interest | | 57.17 | 57.17 |
| 30650.0 | Racketeering Prosecution Fees | | 237,372.01 | 251,745.86 |
| 90930.0 | Warrants Redeemed   — 290 893.0 9 | | (20,805.97) | (112,555.86) |
| 91230.0 | Expense Transfer | | (270,087.12) | (209,183.86) |
| | | Ending Balance: | 2,456,566.39 | 2,456,566.39 |

## Monthly Statement Detail

| Date | Notes | Doc # | Amount | C/D |
|---|---|---|---|---|
| 2000021004 PC Attny Anti-Racketeering Fund | | | Beginning Balance: 2,509,959.24 | |
| 21100.41 Wells Fargo Repo Investment Interest | | | Source Code Total: 68.56 | |
| 08/01 | Investment Interest | 0 | 68.56 | C |
| 21100.43 Wells Fargo Trust Investment Interest | | | Source Code Total: 1.41 | |
| 08/05 | Investment Interest | 0 | 1.41 | C |
| 21100.70 Vining Sparks Investment Interest | | | Source Code Total: 1.09 | |
| 08/05 | Investment Interest | 0 | 1.09 | C |
| 21100.80 Stifel Nicolaus & Company Investment Interest | | | Source Code Total: 57.17 | |
| 08/06 | Investment Interest | 0 | 57.17 | C |
| 30650.0 Racketeering Prosecution Fees | | | Source Code Total: 237,372.01 | |
| 08/06 | PCSO Forfeiture RICO Proceeds: CV-201301078 | 0 | 705.00 | C |
| 08/06 | PCA Forfeiture RICO Proceeds: CV-201301078 | 0 | 235.00 | C |
| 08/06 | PCSO Forfeiture RICO Proceeds: CV-201300702 | 0 | 699.75 | C |
| 08/06 | PCA Forfeiture RICO Proceeds: V-201300702 | 0 | 233.25 | C |
| 08/06 | PCNTF Forfeiture RICO Proceeds: CV-201300311 | 0 | 2,936.25 | C |
| 08/06 | PCA Forfeiture RICO Proceeds: CV-201300311 | 0 | 978.75 | C |
| 08/06 | PCSO Forfeiture RICO Proceeds: CV-201300752 | 0 | 741.00 | C |
| 08/06 | PCA Forfeiture RICO Proceeds: CV-201300752 | 0 | 247.00 | C |
| 08/12 | DPS Forfeiture RICO Proceeds: CASE: CV-2013-01105 | 0 | 32,756.65 | C |



# Pinal County Treasurer

## Monthly Statement

Date Range: 8/1/2013 to 8/31/2013

| | | | |
|---|---|---|---|
| 08/12 | PCA Forfeiture RICO Proceeds  CASE: CV-2013-01105 | 0 | 10,918.88 | C |
| 08/12 | Community Project CASE: CV-2013-01105 | 0 | 2,075.06 | C |
| 08/12 | "PCSO Equitable Sharing CATS ID#13DEA-5770993,    " | 0 | 2,952.45 | C |
| 08/12 | DPS Forfeiture RICO Proceeds: CASE: CV-2013-00945 | 0 | 6,356.87 | C |
| 08/12 | PCA Forfeiture RICO Proceeds  CASE: CV-2013-00945 | 0 | 2,118.96 | C |
| 08/12 | DPS Forfeiture RICO Proceeds: CASE: CV-2013-00944 | 0 | 199.50 | C |
| 08/12 | PCA Forfeiture RICO Proceeds  CASE: CV-2013-00944 | 0 | 66.50 | C |
| 08/12 | PCA Forfeiture RICO Proceeds       CASE: CV-2013009 | 0 | 30.16 | C |
| 08/12 | CGPD Forfeiture RICO Proceeds     CASE: CV-201300997 | 0 | 549.95 | C |
| 08/12 | PCA Forfeiture RICO Proceeds       CASE: CV-2013009 | 0 | 183.31 | C |
| 08/12 | CGPD Forfeiture RICO Proceeds     CASE: CV-201300953 | 0 | 450.05 | C |
| 08/12 | PCA Forfeiture RICO Proceeds       CASE: CV-2013009 | 0 | 150.01 | C |
| 08/12 | CGPD Forfeiture RICO Proceeds     CASE: CV-201300955 | 0 | 423.07 | C |
| 08/12 | PCA Forfeiture RICO Proceeds       CASE: CV-2013009 | 0 | 141.02 | C |
| 08/12 | CGPD Forfeiture RICO Proceeds     CASE: CV-201203415 | 0 | 2,431.53 | C |
| 08/12 | PCA Forfeiture RICO Proceeds       CASE: CV-2012034 | 0 | 810.51 | C |
| 08/12 | CGPD Forfeiture RICO Proceeds     CASE: CV-201300725 | 0 | 11,723.15 | C |
| 08/12 | PCA Forfeiture RICO Proceeds       CASE: CV-2013007 | 0 | 3,907.72 | C |
| 08/12 | CGPD Forfeiture RICO Proceeds     CASE: CV-201201011 | 0 | 1,500.66 | C |
| 08/12 | PCA Forfeiture RICO Proceeds       CASE: CV-2012010 | 0 | 500.22 | C |
| 08/12 | CGPD Forfeiture RICO Proceeds     CASE: CV-201300753 | 0 | 1,049.45 | C |
| 08/12 | PCA Forfeiture RICO Proceeds       CASE: CV-2013007 | 0 | 349.82 | C |
| 08/12 | CGPD Forfeiture RICO Proceeds     CASE: CV-201300951 | 0 | 64.51 | C |
| 08/12 | PCA Forfeiture RICO Proceeds       CASE: CV-2013009 | 0 | 21.50 | C |
| 08/12 | CGPD Forfeiture RICO Proceeds   CASE: CV-201300952 | 0 | 90.49 | C |
| 08/20 | PCNTF Forfeiture RICO Proceeds: CV-20125821 | 0 | 2,957.87 | C |
| 08/20 | PCA Forfeiture RICO Proceeds: CV-20125821 | 0 | 985.96 | C |
| 08/20 | DPS Forfeiture RICO Proceeds: CASE: CV-2012-03167 | 0 | 2,321.25 | C |
| 08/20 | PCA Forfeiture RICO Proceeds  CASE: CV-2012-03167 | 0 | 773.75 | C |
| 08/20 | DPS Forfeiture RICO Proceeds: CASE: CV-2013-00037 | 0 | 134.25 | C |
| 08/20 | PCA Forfeiture RICO Proceeds  CASE: CV-2013-00037 | 0 | 44.75 | C |
| 08/20 | DPS Forfeiture RICO Proceeds: CASE: CV-2012-03023 | 0 | 577.50 | C |
| 08/20 | PCA Forfeiture RICO Proceeds  CASE: CV-2012-03023 | 0 | 192.50 | C |
| 08/20 | DPS Forfeiture RICO Proceeds: CASE: CV-2011-003153 | 0 | 1,848.38 | C |
| 08/20 | PCA Forfeiture RICO Proceeds  CASE: CV-2011-003153 | 0 | 616.12 | C |
| 08/20 | DPS Forfeiture RICO Proceeds: CASE: CV-2013-00144 | 0 | 3,158.25 | C |
| 08/20 | PCA Forfeiture RICO Proceeds  CASE: CV-2013-00144 | 0 | 1,052.75 | C |
| 08/20 | DPS Forfeiture RICO Proceeds: CASE: CV-2013-00036 | 0 | 1,285.13 | C |
| 08/20 | PCA Forfeiture RICO Proceeds  CASE: CV-2013-00036 | 0 | 428.37 | C |
| 08/20 | DPS Forfeiture RICO Proceeds: CASE: CV-2013-00298 | 0 | 719.63 | C |
| 08/20 | PCA Forfeiture RICO Proceeds  CASE: CV-2013-00298 | 0 | 239.87 | C |
| 08/20 | DPS Forfeiture RICO Proceeds: CASE: CV-2012-03235 | 0 | 517.88 | C |
| 08/20 | PCA Forfeiture RICO Proceeds  CASE: CV-2012-03235 | 0 | 172.62 | C |



# Pinal County Treasurer

## Monthly Statement

Date Range: 8/1/2013 to 8/31/2013

| | | | | |
|---|---|---|---|---|
| 08/20 | DPS Forfeiture RICO Proceeds: CASE: CV-2013-00060 | 0 | 507.75 | C |
| 08/20 | PCA Forfeiture RICO Proceeds  CASE: CV-2013-00060 | 0 | 169.25 | C |
| 08/20 | DPS Forfeiture RICO Proceeds: CASE: CV-2013-00059 | 0 | 483.00 | C |
| 08/20 | PCA Forfeiture RICO Proceeds  CASE: CV-2013-00059 | 0 | 161.00 | C |
| 08/20 | DPS Forfeiture RICO Proceeds: CASE: CV-2013-00009 | 0 | 360.75 | C |
| 08/20 | PCA Forfeiture RICO Proceeds  CASE: CV-2013-00009 | 0 | 120.25 | C |
| 08/20 | DPS Forfeiture RICO Proceeds: CASE: CV-2012-03374 | 0 | 228.75 | C |
| 08/20 | PCA Forfeiture RICO Proceeds  CASE: CV-2012-03374 | 0 | 76.25 | C |
| 08/20 | DPS Forfeiture RICO Proceeds: CASE: CV-2012-01007 | 0 | 223.64 | C |
| 08/20 | PCA Forfeiture RICO Proceeds  CASE: CV-2012-01007 | 0 | 74.54 | C |
| 08/20 | DPS Forfeiture RICO Proceeds: CASE: CV-2011-04395 | 0 | 2,398.50 | C |
| 08/20 | PCA Forfeiture RICO Proceeds  CASE: CV-2011-04395 | 0 | 799.50 | C |
| 08/27 | PCSO Forfeiture RICO Proceeds: CV-201202929 | 0 | 80,711.40 | C |
| 08/27 | PCA Forfeiture RICO Proceeds: CV-201202929 | 0 | 26,903.80 | C |
| 08/27 | Community Projects RICO Proceeds: CV-201202929 | 0 | 17,528.80 | C |
| 90930.0 Warrants Redeemed | | | Source Code Total: (20,805.97) | |
| 08/02 | Paid Warrants | 0 | (5,000.00) | D |
| 08/08 | Paid Warrants | 0 | (7,600.00) | D |
| 08/12 | Paid Warrants | 0 | (3,000.00) | D |
| 08/21 | Paid Warrants | 0 | (5,205.97) | D |
| 91230.0 Expense Transfer | | | Source Code Total: (270,087.12) | |
| 08/09 | Day 9 -  Alloc Cash Clear I/F | 0 | (136,571.56) | D |
| 08/14 | Day 14 - Alloc Cash Clear I/F | 0 | (46,032.55) | D |
| 08/21 | Day 21 - Alloc Cash Clear I/F | 0 | (15,846.06) | D |
| 08/23 | Day 23 - Alloc Cash Clear I/F | 0 | (2,151.70) | D |
| 08/28 | Day 28 - Alloc Cash Clear I/F | 0 | (46,319.64) | D |
| 08/30 | Day 30 - Alloc Cash Clear I/F | 0 | (23,165.61) | D |

2000021004 PC Attny Anti-Racketeering Fund       **Ending Balance: 2,456,566.39**



# Pinal County Treasurer

## Monthly Statement

Date Range: 11/1/2013 to 11/30/2013

| 30650.0 Racketeering Prosecution Fees | | Source Code Total: 118,781.62 | |
|---|---|---|---|
| 11/04 CGPD Forfeiture RICO Proceeds   CASE: CV-200904440 | 0 | 1,277.58 | C |
| 11/04 PCA Forfeiture RICO Proceeds      CASE: CV-2009044 | 0 | 425.86 | C |
| 11/05 DPS Forfeiture RICO Proceeds: CASE: CV-2012-002177 | 0 | 433.12 | C |
| 11/05 PCA Forfeiture RICO Proceeds  CASE: CV-2012002177 | 0 | 144.38 | C |
| 11/05 DPS Forfeiture RICO Proceeds: CASE: CV-2012-001392 | 0 | 230.62 | C |
| 11/05 PCA Forfeiture RICO Proceeds  CASE: CV-2012001392 | 0 | 76.88 | C |
| 11/05 DPS Forfeiture RICO Proceeds: CASE: CV-2012-00025 | 0 | 179.25 | C |
| 11/05 PCA Forfeiture RICO Proceeds  CASE: CV-2012-00025 | 0 | 59.75 | C |
| 11/05 DPS Forfeiture RICO Proceeds: CASE: CV-2008-01145 | 0 | 2,527.50 | C |
| 11/05 PCA Forfeiture RICO Proceeds  CASE: CV-2008-01145 | 0 | 842.50 | C |
| 11/05 DPS Forfeiture RICO Proceeds: CASE: CV-2012-01699 | 0 | 1,029.75 | C |
| 11/05 PCA Forfeiture RICO Proceeds  CASE: CV-2012-01699 | 0 | 343.25 | C |
| 11/05 DPS Forfeiture RICO Proceeds: CASE: CV-2013-00297 | 0 | 500.25 | C |
| 11/05 PCA Forfeiture RICO Proceeds  CASE: CV-2013-00297 | 0 | 166.75 | C |
| 11/05 DPS Forfeiture RICO Proceeds: CASE: CV-2013-00299 | 0 | 1,128.00 | C |
| 11/05 PCA Forfeiture RICO Proceeds  CASE: CV-2013-00299 | 0 | 376.00 | C |
| 11/05 DPS Forfeiture RICO Proceeds: CASE: CV-2013-00418 | 0 | 587.62 | C |
| 11/05 PCA Forfeiture RICO Proceeds  CASE: CV-2013-00418 | 0 | 195.88 | C |
| 11/05 DPS Forfeiture RICO Proceeds: CASE: CV-2013-00673 | 0 | 483.00 | C |
| 11/05 PCA Forfeiture RICO Proceeds  CASE: CV-2013-00673 | 0 | 161.00 | C |
| 11/05 DPS Forfeiture RICO Proceeds: CASE: CV-2013-00807 | 0 | 472.88 | C |
| 11/05 PCA Forfeiture RICO Proceeds  CASE: CV-2013-00807 | 0 | 157.62 | C |
| 11/05 DPS Forfeiture RICO Proceeds: CASE: CV-2013-00948 | 0 | 483.00 | C |
| 11/05 PCA Forfeiture RICO Proceeds  CASE: CV-2013-00948 | 0 | 161.00 | C |
| 11/05 DPS Forfeiture RICO Proceeds: CASE: CV-2013-00749 | 0 | 159.00 | C |
| 11/05 PCA Forfeiture RICO Proceeds  CASE: CV-2013-00749 | 0 | 53.00 | C |
| 11/05 DPS Forfeiture RICO Proceeds: CASE: CV-2013-00947 | 0 | 540.00 | C |
| 11/05 PCA Forfeiture RICO Proceeds  CASE: CV-2013-00947 | 0 | 180.00 | C |
| 11/05 DPS Forfeiture RICO Proceeds: CASE: CV-2013-00946 | 0 | 971.25 | C |
| 11/05 PCA Forfeiture RICO Proceeds  CASE: CV-2013-00946 | 0 | 323.75 | C |
| 11/05 DPS Forfeiture RICO Proceeds: CASE: CV-2011-00751 | 0 | 400.50 | C |
| 11/05 PCA Forfeiture RICO Proceeds  CASE: CV-2011-00751 | 0 | 133.50 | C |
| 11/05 DPS Forfeiture RICO Proceeds: CASE: CV-2013-00699 | 0 | 1,840.50 | C |
| 11/05 PCA Forfeiture RICO Proceeds  CASE: CV-2013-00699 | 0 | 613.50 | C |
| 11/05 DPS Forfeiture RICO Proceeds: CASE: CV-2004-01362 | 0 | 2,773.50 | C |
| 11/05 PCA Forfeiture RICO Proceeds  CASE: CV-2004-01362 | 0 | 924.50 | C |
| 11/05 DPS Forfeiture RICO Proceeds: CASE: CV-2012-00025 | 0 | 5,226.00 | C |
| 11/05 PCA Forfeiture RICO Proceeds  CASE: CV-2012-00025 | 0 | 1,742.00 | C |
| 11/05 DPS Forfeiture RICO Proceeds: CASE: CV-2013-00038 | 0 | 996.00 | C |
| 11/05 PCA Forfeiture RICO Proceeds  CASE: CV-2013-00038 | 0 | 332.00 | C |
| 11/05 DPS Forfeiture RICO Proceeds: CASE: CV-2013-00365 | 0 | 8,295.00 | C |
| 11/05 PCA Forfeiture RICO Proceeds  CASE: CV-2013-00365 | 0 | 2,765.00 | C |



# Pinal County Treasurer

## Monthly Statement

Date Range: 11/1/2013 to 11/30/2013

| | | | |
|---|---|---|---|
| 11/05 DPS Forfeiture RICO Proceeds: CASE: CV-2013-00301 | 0 | 2,662.50 | C |
| 11/05 PCA Forfeiture RICO Proceeds  CASE: CV-2013-00301 | 0 | 887.50 | C |
| 11/05 DPS Forfeiture RICO Proceeds: CASE: CV-2013-00418 | 0 | 2,366.25 | C |
| 11/05 PCA Forfeiture RICO Proceeds  CASE: CV-2013-00418 | 0 | 788.75 | C |
| 11/05 DPS Forfeiture RICO Proceeds: CASE: CV-2013-00676 | 0 | 1,599.00 | C |
| 11/05 PCA Forfeiture RICO Proceeds  CASE: CV-2013-00676 | 0 | 533.00 | C |
| 11/05 DPS Forfeiture RICO Proceeds: CASE: CV-2013-03168 | 0 | 7,098.69 | C |
| 11/05 PCA Forfeiture RICO Proceeds  CASE: CV-2012-03168 | 0 | 2,366.23 | C |
| 11/05 DPS Forfeiture RICO Proceeds: CASE: CV-2012-03164 | 0 | 2,701.50 | C |
| 11/05 PCA Forfeiture RICO Proceeds  CASE: CV-2012-03164 | 0 | 900.50 | C |
| 11/05 DPS Forfeiture RICO Proceeds: CASE: CV-2012-03376 | 0 | 1,686.00 | C |
| 11/05 PCA Forfeiture RICO Proceeds  CASE: CV-2012-00376 | 0 | 562.00 | C |
| 11/05 DPS Forfeiture RICO Proceeds: CASE: CV-2012-03165 | 0 | 1,317.00 | C |
| 11/05 PCA Forfeiture RICO Proceeds  CASE: CV-2012-03165 | 0 | 439.00 | C |
| 11/13 PCNTF Forfeiture RICO Proceeds: CV-201302033 | 0 | 914.25 | C |
| 11/13 PCA Forfeiture RICO Proceeds: CV-201302033 | 0 | 304.75 | C |
| 11/13 PCNTF Forfeiture RICO Proceeds: CV-201301688 | 0 | 954.00 | C |
| 11/13 PCA Forfeiture RICO Proceeds: CV-201301688 | 0 | 318.00 | C |
| 11/13 PCSO Forfeiture RICO Proceeds: CV-201302161 | 0 | 5,460.75 | C |
| 11/13 PCA Forfeiture RICO Proceeds: CV-201302161 | 0 | 1,820.25 | C |
| 11/13 DPS Forfeiture RICO Proceeds: CASE: CV-2013-02329 | 0 | 4,906.35 | C |
| 11/13 PCA Forfeiture RICO Proceeds  CASE: CV-2013-023929 | 0 | 1,635.45 | C |
| 11/13 PCSO Forfeiture RICO Proceeds: CV-201302210 | 0 | 1,113.75 | C |
| 11/13 PCA Forfeiture RICO Proceeds: CV-201302210 | 0 | 371.25 | C |
| 11/19 PCSO Forfeiture RICO Proceeds: CV-201201464 | 0 | 80.78 | C |
| 11/19 PCA Forfeiture RICO Proceeds: CV-201201464 | 0 | 26.92 | C |
| 11/19 PCNTF Forfeiture RICO Proceeds: CV-201201265 | 0 | 42.49 | C |
| 11/19 PCA Forfeiture RICO Proceeds: CV-201201265 | 0 | 14.40 | C |
| 11/19 Maricopa PD Forfeiture RICO Proceeds: CV-201301684 | 0 | 150.00 | C |
| 11/19 PCA Forfeiture RICO Proceeds: CV-201301684 | 0 | 50.00 | C |
| 11/19 Maricopa PD Forfeiture RICO Proceeds: CV-201301083 | 0 | 30.00 | C |
| 11/19 PCA Forfeiture RICO Proceeds: CV-201301083 | 0 | 10.00 | C |
| 11/19 Maricopa PD Forfeiture RICO Proceeds: CV-201300168 | 0 | 216.00 | C |
| 11/19 PCA Forfeiture RICO Proceeds: CV-201301686 | 0 | 72.00 | C |
| 11/21 PCSO forfeiture RICO Proceeds DR-050930056 | 0 | 276.50 | C |
| 11/21 PCSO forfeiture RICO Proceeds DR071128055/DR070320 | 0 | 288.75 | C |
| 11/27 EPD Forfeiture RICO Proceeds: Auction - CV20130172 | 0 | 647.25 | C |
| 11/27 PCA Forfeiture RICO Proceeds: Auction - CV20130172 | 0 | 215.75 | C |
| 11/27 EPD Forfeiture RICO Proceeds: Auction - CV20130099 | 0 | 116.25 | C |
| 11/27 PCA Forfeiture RICO Proceeds: Auction - CV20130099 | 0 | 38.75 | C |
| 11/27 EPD Forfeiture RICO Proceeds: Auction - CV20130172 | 0 | 1,175.25 | C |
| 11/27 PCA Forfeiture RICO Proceeds: Auction - CV20130172 | 0 | 391.75 | C |



# Pinal County Treasurer

## Monthly Statement

Date Range: 11/1/2013 to 11/30/2013

| | | | | |
|---|---|---|---|---|
| 11/27 | DPS Forfeiture RICO Proceeds: CASE: CV-2013-01520 | 0 | 2,392.50 | C |
| 11/27 | PCA Forfeiture RICO Proceeds  CASE: CV-2013-01520 | 0 | 797.50 | C |
| 11/27 | DPS Forfeiture RICO Proceeds: CASE: CV-2013-01678 | 0 | 93.75 | C |
| 11/27 | PCA Forfeiture RICO Proceeds  CASE: CV-2013-01678 | 0 | 31.25 | C |
| 11/27 | DPS Forfeiture RICO Proceeds: CASE: CV-2013-01679 | 0 | 18,947.66 | C |
| 11/27 | PCA Forfeiture RICO Proceeds  CASE: CV-2013-01679 | 0 | 6,315.88 | C |
| 11/27 | Community Project CASE: CV-2013-01679 | 0 | 29.28 | C |
| 11/27 | EPD Forfeiture RICO Proceeds: Auction -CV201203307 | 0 | 330.60 | C |
| 11/27 | PCA Forfeiture RICO Proceeds: Auction - CV20120330 | 0 | 110.20 | C |
| 11/27 | AJPD Forfeiture RICO Proceeds  CASE: CV-201302034 | 0 | 960.00 | C |
| 11/27 | PCA Forfeiture RICO Proceeds    CASE: CV-201302034 | 0 | 320.00 | C |
| 11/27 | AJPD Forfeiture RICO Proceeds  CASE: CV-201300756 | 0 | 143.25 | C |
| 11/27 | PCA Forfeiture RICO Proceeds    CASE: CV-201300756 | 0 | 47.75 | C |
| 73160.0 Deposits | | | Source Code Total: 12,215.27 | |
| 11/14 | CK#6227740 AG's Office | 0 | 12,215.27 | C |
| 91230.0 Expense Transfer | | | Source Code Total: (55,138.68) | |
| 11/08 | Day 7 -  Alloc Cash Clear I/F | 0 | (18,797.91) | D |
| 11/12 | Day 12 - Alloc Cash Clear I/F | 0 | (9,048.57) | D |
| 11/13 | Day 13 - Alloc Cash Clear I/F | 0 | (1,858.61) | D |
| 11/20 | Day 20 - Alloc Cash Clear I/F | 0 | (17,131.61) | D |
| 11/21 | Day 21 - Alloc Cash Clear I/F | 0 | (7,415.67) | D |
| 11/25 | Day 25 - Alloc Cash Clear I/F | 0 | (830.32) | D |
| 11/26 | Day 26 - Alloc Cash Clear I/F | 0 | (55.99) | D |

2000021004 PC Attny Anti-Racketeering Fund    **Ending Balance: 2,351,750.67**

## Warrant Detail

| Payee Name | Warrant | Amount | Issue Dt | Status Dt | Voucher |
|---|---|---|---|---|---|
| 2000021004 PC Attny Anti-Racketeering Fund | | | | Account Total: 5,438.15 | |
| Fund: 0184 | | | | Fund Total: 5,438.15 | |
| Status: OUTS | | | | Status Total: 5,438.15 | |
| PINAL HISPANIC COUNCIL | 0293304809 | 300.00 | 11/06/12 | 11/07/12 | |
| MAACO COLLISION REPAIR & PAINT | 0293322361 | 2,066.15 | 05/23/13 | 05/24/13 | |
| SANTA CRUZ VALLEY LITTLE LEAGU | 0293323430 | 2,000.00 | 06/04/13 | 06/05/13 | |
| AZ ASSOC OF CHIEFS OF POLICE | 0293326127 | 536.00 | 07/02/13 | 07/03/13 | |
| AZ ASSOC OF CHIEFS OF POLICE | 0293327150 | 536.00 | 07/09/13 | 07/10/13 | |
| | Count | Amount | | | |
| Total OUTS: | 5 | 5,438.15 | | | |

$6057$



# Pinal County Treasurer

## Monthly Statement

Date Range: 12/1/2013 to 12/31/2013

| | | | | |
|---|---|---|---|---|
| 21100.70 Vining Sparks Investment Interest | | | Source Code Total: .85 | |
| 12/04 | Investment Interest | 0 | .85 | C |
| 21100.99 SCV UHS Refunding Bond Investment Interest | | | Source Code Total: 39.29 | |
| 12/31 | Investment Interest | 0 | 39.29 | C |
| 30650.0 Racketeering Prosecution Fees | | | Source Code Total: 18,794.78 | |
| 12/23 | PCA Forfeiture RICO Proceeds  CASE: CV-201301077 | 0 | 277.25 | C |
| 12/23 | DPS Forfeiture RICO Proceeds: CASE: CV-201301064 | 0 | 821.62 | C |
| 12/23 | PCA Forfeiture RICO Proceeds  CASE: CV-201301064 | 0 | 273.88 | C |
| 12/23 | PCA Forfeiture RICO Proceeds     CASE: CV-2012033 | 0 | 195.80 | C |
| 12/23 | DPS Forfeiture RICO Proceeds: CASE: CV-201301520 | 0 | 1,908.00 | C |
| 12/23 | PCA Forfeiture RICO Proceeds  CASE: CV-201301520 | 0 | 636.00 | C |
| 12/23 | DPS Forfeiture RICO Proceeds: CASE: CV-201300366 | 0 | 971.25 | C |
| 12/23 | PCA Forfeiture RICO Proceeds  CASE: CV-201300366 | 0 | 323.75 | C |
| 12/23 | DPS Forfeiture RICO Proceeds: CASE: CV-201301081 | 0 | 1,878.00 | C |
| 12/23 | PCA Forfeiture RICO Proceeds  CASE: CV-201301081 | 0 | 626.00 | C |
| 12/23 | DPS Forfeiture RICO Proceeds: CASE: CV-201301077 | 0 | 831.75 | C |
| 12/23 | EPD Forfeiture RICO Proceeds: CV201300998 | 0 | 974.70 | C |
| 12/23 | PCA Forfeiture RICO Proceeds: CV201200998 | 0 | 324.90 | C |
| 12/23 | EPD Forfeiture RICO Proceeds: CV201301722 | 0 | 2,015.55 | C |
| 12/23 | PCA Forfeiture RICO Proceeds: CV201301722 | 0 | 671.85 | C |
| 12/23 | EPD Forfeiture RICO Proceeds: CV201301683 | 0 | 223.05 | C |
| 12/23 | PCA Forfeiture RICO Proceeds: CV201301683 | 0 | 74.35 | C |
| 12/23 | EPD Forfeiture RICO Proceeds: CV201301079 | 0 | 402.30 | C |
| 12/23 | PCA Forfeiture RICO Proceeds: CV201301079 | 0 | 134.10 | C |
| 12/23 | CGPD Forfeiture RICO Proceeds  CASE: CV-201300997 | 0 | 827.55 | C |
| 12/23 | PCA Forfeiture RICO Proceeds     CASE: CV-2013009 | 0 | 275.85 | C |
| 12/23 | CGPD Forfeiture RICO Proceeds  CASE: CV-201300954 | 0 | 659.10 | C |
| 12/23 | PCA Forfeiture RICO Proceeds     CASE: CV-2013009 | 0 | 219.70 | C |
| 12/23 | CGPD Forfeiture RICO Proceeds  CASE: CV-201203175 | 0 | 793.35 | C |
| 12/23 | PCA Forfeiture RICO Proceeds     CASE: CV-2012031 | 0 | 264.45 | C |
| 12/23 | CGPD Forfeiture RICO Proceeds  CASE: CV-201203173 | 0 | 721.65 | C |
| 12/23 | PCA Forfeiture RICO Proceeds     CASE: CV-2012031 | 0 | 240.55 | C |
| 12/23 | CGPD Forfeiture RICO Proceeds  CASE: CV-201201011 | 0 | 148.05 | C |
| 12/23 | PCA Forfeiture RICO Proceeds     CASE: CV-2012010 | 0 | 49.35 | C |
| 12/23 | CGPD Forfeiture RICO Proceeds  CASE: CV-201202230 | 0 | 183.90 | C |
| 12/23 | PCA Forfeiture RICO Proceeds     CASE: CV-2012022 | 0 | 61.30 | C |
| 12/23 | CGPD Forfeiture RICO Proceeds  CASE: CV-201203309 | 0 | 587.40 | C |
| 12/27 | DPS Forfeiture RICO Proceeds: CASE: CV-201300751 | 0 | 133.88 | C |
| 12/27 | PCA Forfeiture RICO Proceeds  CASE: CV-201300751 | 0 | 44.62 | C |
| 12/27 | DPS Forfeiture RICO Proceeds: CASE: CV-200800450 | 0 | 14.98 | C |
| 12/27 | PCA Forfeiture RICO Proceeds  CASE: CV-200800450 | 0 | 5.00 | C |
| 73160.0 Deposits | | | Source Code Total: 500.00 | |
| 12/12 | Case # 120130011 AG's Office | 0 | 500.00 | C |



# Pinal County Treasurer

## Monthly Statement

Date Range: 12/1/2013 to 12/31/2013

| 91230.0 Expense Transfer | | Source Code Total: (407,768.51) | |
|---|---|---|---|
| 12/05 Day 5 - Alloc Cash Clear I/F | 0 | (29,620.51) | D |
| 12/05 Day 3 - Alloc Cash Clear I/F | 0 | (8,826.85) | D |
| 12/06 Day 1 - Alloc Cash Clear I/F | 0 | (72.00) | D |
| 12/09 Day 9 - Alloc Cash Clear I/F | 0 | (25.43) | D |
| 12/11 Day 11 - Alloc Cash Clear I/F | 0 | (9,038.15) | D |
| 12/12 Day 12 - Alloc Cash Clear I/F | 0 | (8,051.44) | D |
| 12/16 Day 16 - Alloc Cash Clear I/F | 0 | (18,693.44) | D |
| 12/17 Day 17 - Alloc Cash Clear I/F | 0 | (3,013.13) | D |
| 12/19 Day 19 - Alloc Cash Clear I/F | 0 | (310,021.38) | D |
| 12/24 Day 24 - Alloc Cash Clear I/F | 0 | (828.15) | D |
| 12/26 Day 26 - Alloc Cash Clear I/F | 0 | (18,360.41) | D |
| 12/30 Day 30 - Alloc Cash Clear I/F | 0 | (847.85) | D |
| 12/31 Day 31 - Alloc Cash Clear I/F | 0 | (369.77) | D |

2000021004 PC Attny Anti-Racketeering Fund   **Ending Balance: 1,963,675.58**

## Warrant Detail

| Payee Name | Warrant | Amount | Issue Dt | Status Dt | Voucher |
|---|---|---|---|---|---|
| 2000021004 PC Attny Anti-Racketeering Fund | | | | Account Total: 5,438.15 | |
| Fund: 0184 | | | | Fund Total: 5,438.15 | |
| Status: OUTS | | | | Status Total: 5,438.15 | |
| PINAL HISPANIC COUNCIL | 0293304809 | 300.00 | 11/06/12 | 11/07/12 | |
| MAACO COLLISION REPAIR & PAINT | 0293322361 | 2,066.15 | 05/23/13 | 05/24/13 | |
| SANTA CRUZ VALLEY LITTLE LEAGU | 0293323430 | 2,000.00 | 06/04/13 | 06/05/13 | |
| AZ ASSOC OF CHIEFS OF POLICE | 0293326127 | 536.00 | 07/02/13 | 07/03/13 | |
| AZ ASSOC OF CHIEFS OF POLICE | 0293327150 | 536.00 | 07/09/13 | 07/10/13 | |
| | Count | Amount | | | |
| Total OUTS: | 5 | 5,438.15 | | | |



# Pinal County Treasurer

## Monthly Statement

Date Range: 2/1/2014 to 2/28/2014

| | | | |
|---|---|---|---|
| 02/12 | Investment Interest | 0 | 52.64 | C |
| 21100.80 Stifel Nicolaus & Company Investment Interest | | Source Code Total: 47.39 | |
| 02/06 | Investment Interest | 0 | 47.39 | C |
| 21100.95 Citgroup Global Market Investment Interest | | Source Code Total: 61.32 | |
| 02/26 | Investment Interest | 0 | 61.32 | C |
| 30650.0 Racketeering Prosecution Fees | | Source Code Total: 32,093.87 | |
| 02/05 | DPS Forfeiture RICO Proceeds: CASE: CV-2013-01520 | 0 | 1,041.00 | C |
| 02/05 | PCA Forfeiture RICO Proceeds  CASE: CV-2013-01520 | 0 | 347.00 | C |
| 02/05 | PCA Forfeiture RICO Proceeds  CASE: CV-2013-01521 | 0 | (25.00) | C |
| 02/05 | DPS Forfeiture RICO Proceeds: CASE: CV-2013-00700 | 0 | 3,970.50 | C |
| 02/05 | PCA Forfeiture RICO Proceeds  CASE: CV-2013-00700 | 0 | 1,323.50 | C |
| 02/05 | DPS Forfeiture RICO Proceeds: CASE: CV-2013-00995 | 0 | 831.75 | C |
| 02/05 | PCA Forfeiture RICO Proceeds  CASE: CV-2013-00995 | 0 | 277.25 | C |
| 02/05 | DPS Forfeiture RICO Proceeds: CASE: CV-2013-01336 | 0 | 193.88 | C |
| 02/05 | PCA Forfeiture RICO Proceeds  CASE: CV-2013-01336 | 0 | 64.62 | C |
| 02/05 | DPS Forfeiture RICO Proceeds: CASE: CV-2013-01472 | 0 | 926.25 | C |
| 02/05 | PCA Forfeiture RICO Proceeds  CASE: CV-2013-01472 | 0 | 308.75 | C |
| 02/05 | DPS Forfeiture RICO Proceeds: CASE: CV-2013-01422 | 0 | 220.88 | C |
| 02/05 | PCA Forfeiture RICO Proceeds  CASE: CV-2013-01422 | 0 | 73.62 | C |
| 02/05 | DPS Forfeiture RICO Proceeds: CASE: CV-2013-01473 | 0 | 290.63 | C |
| 02/05 | PCA Forfeiture RICO Proceeds  CASE: CV-2013-01473 | 0 | 96.87 | C |
| 02/05 | DPS Forfeiture RICO Proceeds: CASE: CV-2013-01338 | 0 | 483.00 | C |
| 02/05 | PCA Forfeiture RICO Proceeds  CASE: CV-2013-01338 | 0 | 161.00 | C |
| 02/05 | DPS Forfeiture RICO Proceeds: CASE: CV-2013-01421 | 0 | 2,391.00 | C |
| 02/05 | PCA Forfeiture RICO Proceeds  CASE: CV-2013-01421 | 0 | 797.00 | C |
| 02/05 | DPS Forfeiture RICO Proceeds: CASE: CV-2013-01334 | 0 | 1,554.00 | C |
| 02/05 | PCA Forfeiture RICO Proceeds  CASE: CV-2013-01334 | 0 | 518.00 | C |
| 02/05 | DPS Forfeiture RICO Proceeds: CASE: CV-2013-01423 | 0 | 1,344.75 | C |
| 02/05 | PCA Forfeiture RICO Proceeds  CASE: CV-2013-01423 | 0 | 448.25 | C |
| 02/05 | DPS Forfeiture RICO Proceeds: CASE: CV-2013-01517 | 0 | 1,509.00 | C |
| 02/05 | PCA Forfeiture RICO Proceeds  CASE: CV-2013-01517 | 0 | 503.00 | C |
| 02/05 | DPS Forfeiture RICO Proceeds: CASE: CV-2013-01518 | 0 | 552.75 | C |
| 02/05 | PCA Forfeiture RICO Proceeds  CASE: CV-2013-01518 | 0 | 184.25 | C |
| 02/05 | DPS Forfeiture RICO Proceeds: CASE: CV-2013-01679 | 0 | 403.13 | C |
| 02/05 | PCA Forfeiture RICO Proceeds  CASE: CV-2013-01679 | 0 | 134.37 | C |
| 02/05 | DPS Forfeiture RICO Proceeds: CASE: CV-2013-01474 | 0 | 856.50 | C |
| 02/05 | PCA Forfeiture RICO Proceeds  CASE: CV-2013-01474 | 0 | 285.50 | C |
| 02/05 | DPS Forfeiture RICO Proceeds: CASE: CV-2013-01872 | 0 | 1,389.75 | C |
| 02/05 | PCA Forfeiture RICO Proceeds  CASE: CV-2013-01872 | 0 | 463.25 | C |
| 02/05 | DPS Forfeiture RICO Proceeds: CASE: CV-2013-01900 | 0 | 483.00 | C |
| 02/05 | PCA Forfeiture RICO Proceeds  CASE: CV-2013-01900 | 0 | 161.00 | C |
| 02/05 | DPS Forfeiture RICO Proceeds: CASE: CV-2013-01899 | 0 | 2,670.00 | C |
| 02/05 | PCA Forfeiture RICO Proceeds  CASE: CV-2013-01899 | 0 | 890.00 | C |



# Pinal County Treasurer

## Monthly Statement

Date Range: 2/1/2014 to 2/28/2014

| | | | | |
|---|---|---|---|---|
| 02/05 | DPS Forfeiture RICO Proceeds: CASE: CV-2013-01871 | 0 | 507.75 | C |
| 02/05 | PCA Forfeiture RICO Proceeds  CASE: CV-2013-01871 | 0 | 169.25 | C |
| 02/05 | DPS Forfeiture RICO Proceeds: CASE: CV-2013-01521 | 0 | (75.00) | C |
| 02/07 | DPS Forfeiture RICO Proceeds: CASE: CV-2013-00367 | 0 | 1,693.50 | C |
| 02/07 | PCA Forfeiture RICO Proceeds  CASE: CV-2013-00367 | 0 | 564.50 | C |
| 02/07 | DPS Forfeiture RICO Proceeds: CASE: CV-2013-03375 | 0 | 639.75 | C |
| 02/07 | PCA Forfeiture RICO Proceeds  CASE: CV-2013-03375 | 0 | 213.25 | C |
| 02/07 | DPS Forfeiture RICO Proceeds: CASE: CV-2013-00038 | 0 | 102.65 | C |
| 02/07 | PCA Forfeiture RICO Proceeds  CASE: CV-2013-00038 | 0 | 34.22 | C |
| 02/07 | DPS Forfeiture RICO Proceeds: CASE: CV-2013-00750 | 0 | 70.50 | C |
| 02/07 | PCA Forfeiture RICO Proceeds  CASE: CV-2013-00750 | 0 | 23.50 | C |
| 02/07 | DPS Forfeiture RICO Proceeds: CASE: CV-2013-01678 | 0 | 19.50 | C |
| 02/07 | PCA Forfeiture RICO Proceeds  CASE: CV-2013-01678 | 0 | 6.50 | C |
| 64170.0 Auction Proceeds | | | Source Code Total: 2,932.61 | |
| 02/04 | AUCTION PROCEEDS 1/11/14 | 0 | 1,969.04 | C |
| 02/04 | AUCTION PROCEEDS 1/11/14 | 0 | 581.87 | C |
| 02/04 | AUCTION PROCEEDS 1/11/14 | 0 | 265.33 | C |
| 02/06 | AUCTION PROCEEDS 12/14/13 | 0 | 116.37 | C |
| 90930.0 Warrants Redeemed | | | Source Code Total: (2,000.00) | |
| 02/12 | Paid Warrants | 0 | (2,000.00) | D |
| 91230.0 Expense Transfer | | | Source Code Total: (84,329.60) | |
| 02/04 | Day 4 -  Alloc Cash Clear I/F | 0 | (5,356.04) | D |
| 02/06 | Day 6 -  Alloc Cash Clear I/F | 0 | (21,100.00) | D |
| 02/11 | Day 11 -  Alloc Cash Clear I/F | 0 | (16,373.98) | D |
| 02/13 | Day 13 - Alloc Cash Clear I/F | 0 | (10,839.22) | D |
| 02/18 | Day 18 - Alloc Cash Clear I/F | 0 | (2,320.76) | D |
| 02/19 | Day 19 - Alloc Cash Clear I/F | 0 | (1,901.67) | D |
| 02/20 | Day 20 - Alloc Cash Clear I/F | 0 | (20,455.07) | D |
| 02/25 | Day 25 - Alloc Cash Clear I/F | 0 | (2,128.94) | D |
| 02/27 | Day 27 - Alloc Cash Clear I/F | 0 | (1,268.78) | D |
| 02/27 | Day 15 - Alloc Cash Clear I/F | 0 | (2,585.14) | D |

2000021004 PC Attny Anti-Racketeering Fund   **Ending Balance: 1,921,373.65**



# Pinal County Treasurer

## Monthly Statement

Date Range: 2/1/2014 to 2/28/2014

## Warrant Detail

| Payee Name | Warrant | Amount | Issue Dt | Status Dt | Voucher |
|---|---|---|---|---|---|
| 2000021004 PC Attny Anti-Racketeering Fund | | | | | Account Total: 5,438.15 |
| Fund: 0184 | | | | | Fund Total: 5,438.15 |
| Status: OUTS | | | | | Status Total: 3,438.15 |
| PINAL HISPANIC COUNCIL | 0293304809 | 300.00 | 11/06/12 | 11/07/12 | |
| MAACO COLLISION REPAIR & PAINT | 0293322361 | 2,066.15 | 05/23/13 | 05/24/13 | |
| AZ ASSOC OF CHIEFS OF POLICE | 0293326127 | 536.00 | 07/02/13 | 03/06/14 | |
| AZ ASSOC OF CHIEFS OF POLICE | 0293327150 | 536.00 | 07/09/13 | 03/06/14 | |
| Status: PAID | | | | | Status Total: 2,000.00 |
| SANTA CRUZ VALLEY LITTLE LEAGU | 0293323430 | 2,000.00 | 06/04/13 | 02/12/14 | |

| | Count | Amount |
|---|---|---|
| Total OUTS: | 4 | 3,438.15 |
| Total PAID: | 1 | 2,000.00 |

# Exhibit 10

**Elizabeth Ortiz**

| | |
|---|---|
| **From:** | Elizabeth Iniguez |
| **Sent:** | Thursday, April 25, 2013 11:17 AM |
| **To:** | Elizabeth Iniguez |
| **Cc:** | Elizabeth Ortiz; Kim MacEachern; Denise Helm; Diana Cooney |
| **Subject:** | Announcement Notice:  Forfeiture Training |



# Forfeiture Training
## May 31, 2013

Arizona's forfeiture statute provides law enforcement agencies with the means to:  destroy the money base of illegal enterprises; dete individuals from using their property to facilitate criminal activity confiscate the proceeds of criminal activity; and rededicate thos proceeds to the public good.  For these reasons, and many more, asse forfeiture is now recognized as one of the most powerful tools fo targeting criminals and criminal enterprises.  Additionally, an asse forfeiture practice that supplements other law enforcement activitie provides an opportunity that is unique among governmenta agencies – the direct augmentation of the agency's budget throug the performance of its designated function.

1

*Thank you,*
*Elizabeth Iniguez-Reyna, CGMP*
*Meeting & Technology Coordinator*
*A.P.A.A.C.*
*1951 W. Camelback Rd., Ste. 202*
*Phoenix, AZ  85015*
*602- 54-APAAC*
*(602- 542-7222)*
*602-542-7208-Direct*
*602-274-4215-Fax*
*http://apaac.az.gov*
*Elizabeth.iniguez@apaac.az.gov*

*"Empowering Arizona's prosecutors to administer justice and contribute to public safety through training and advocacy"*



# Exhibit 11



# PROFESSIONAL AND
# ETHICAL PRACTICE

- Essential to maintaining the availability of asset forfeiture as a civil remedy



"*With great power comes great responsibility.*"







2

# Results of Unprofessional Conduct



*A former district attorney in Kansas is accused of improperly using asset forfeiture funds and other public money to pay for his work in appeals cases. The county is pursuing civil litigation seeking return of nearly $500,000 .*

Georgia Law Enforcement Often Refuses to Report Forfeiture Funds, a Violation of GA Law.   Civil forfeiture threatens the property rights of all Americans. Georgia has some of the worst civil forfeiture laws in the country.

## Romulus cops charged with misusing drug funds suspended without pay

### Ex-chief, officers allegedly spent $100K on prostitutes, marijuana

Steve Pardo/ The Detroit News

*Romulus*— The former police chief of Romulus and five officers from a special investigative division allegedly spent more than $100,000 in forfeited drug money to buy booze, marijuana, prostitutes, lavish trips and a tanning salon for the ex-chief's wife, authorities said Tuesday.

# Results of Professional Conduct



Published: 02.10.2005

## 2 guilty of fraud for hiding assets

By Patty Machelor

*ARIZONA DAILY STAR*

A Tucson couple has been convicted of conspiracy and fraud for hiding assets after state regulators took control of their business under a court-ordered receivership.

The trial was the smaller of two scheduled for this year involving Maryanne Chisholm, who faces more than 50 investor-fraud counts in May.

Chisholm and her husband, Mark, owned Tucson-based Safari Media International, a computer multimedia business that had branched out into running "raves" and marathon dance concerts in Arizona and other cities across the nation.

They face a minimum of probation and a maximum of 12 1/2 years in prison at their sentencing March 28.

Maryanne Chisholm's lawyer, Andrew Diodati, said the paintings should have been a civil matter between the Chisholms and American Express, not a criminal case.

"The truth is that these paintings were placed on a personal American Express card and were never paid for at all," he said, explaining his client's assets had been frozen.

Pima County Superior Court Judge Christopher Browning convicted the couple, who waived their right to a jury, after a 12-day trial.

"This whole case was about lifestyle and their trying to maintain that lifestyle," **said prosecutor John Evans, an assistant attorney general.**

Evans said a second trial, set for May 3, includes charges Maryanne Chisholm bilked about 1,200 investors out of about $24 million.

According to the state's case, the victims thought they were buying stock in an established company.

"She's looking at over 300 years in prison," Evans said of the upcoming trial.



## Western Union $94M settlement broadens border states' investigative powers

**Sean Holstege** - Feb. 12, 2010 12:00 AM
The Arizona Republic

Arizona has reached a legal settlement with Western Union Co. that will allow authorities in all four states along the Mexican border to sift and seize electronic-wire payments suspected of going to drug- and human-smuggling cartels in Mexico. Under the terms of the settlement, announced Thursday by the Arizona Attorney General's Office, the state will create a first-of-its-kind border task force aimed at combating cartel money laundering.

4

# NATIONAL CODE OF PROFESSIONAL CONDUCT FOR ASSET FORFEITURE

1. Law enforcement is the principal objective of forfeiture; potential revenue must not jeopardize investigations, prosecutions, officer safety, or due process

2. No officer or attorney's salary may be tied to seizure or forfeiture levels

3. Whenever practicable, a judicial finding of probable cause should be secured for a seizure

4. If no judicial finding is secured, seizure should be approved in writing by a government attorney or supervisor

5. Seizing agencies shall have a manual detailing statutory grounds for forfeiture and all policies and procedures

# NATIONAL CODE OF PROFESSIONAL CONDUCT FOR ASSET FORFEITURE

6. Manual shall include procedures for prompt notice to interest holders, release of property, resolution of claims

7. Agencies shall ensure that retained property is subject to internal controls used for normally appropriated property

8. Unless otherwise provided by law, forfeiture proceeds shall be maintained is a separate fund or account, subject to accounting controls and annual audits of deposits and expenditures

9. Agencies shall ensure that seized property is protected and its value preserved

10. Agencies shall avoid any appearance of impropriety in the sale or acquisition of forfeited property

# PROFESSIONAL  AND  ETHICAL PRACTICE

## "Don't Ruin Forfeitures For All Of Us"

- When your bosses can't find any money in their budget they get depressed.

- When they get depressed they tell you to start doing forfeiture cases.

- When you start doing forfeiture cases you go to a Forfeitures seminar.

- When you go to a Forfeitures seminar you feel like a winner.

- When you feel like a winner you go back to your jurisdiction and just start seizing everything in sight.

- When you just start seizing everything in sight you screw things up and lose everything.

- When you screw things up and lose everything you ruin forfeitures for all of us.

- Don't ruin forfeitures for all of us.  Get the purpose of this seminar and follow an educated, ethical and professional forfeiture practice.

7

# Arizona Forfeiture Association

Quarterly meetings are held on first Thursday of the last month of each quarter.  See Carol Keppler of the

Arizona Attorney General's Office to get on email list.

# PROPER INVESTIGATION AND COMPLIANCE WITH FORFEITURE STATUTES AND GUIDELINES WILL INSURE THE INTEGRITY AND AVAILABILITY OF ASSET FORFEITURE AS A CIVIL REMEDY













# Exhibit 12



**TRENDING**

Ice Break(http://kvoa.upickem.net/engine
/YourSubmission.aspx?contestid=120680)
|
Lifesaver(http://www.kvoa.com/pages/news-4-lifesaver-
2014/)

Sponsored by: Desert Diamond
Casino

 (/)

**77**°

**Tucson** ›

(/weather/)

(/) | NEWS(/NEWS/) | SPORTS(/SPORTS/) | WEATHER(/WEATHER/) |

COMMUNITY(/COMMUNITY/) | VIDEOS(/VIDEOS/) | ON KVOA(/ON-KVOA/) |

**CRIME TRACKERS(/CATEGORY/CRIME-TRACKERS/)**



SHARE:   :

Jun 19, 2013 2:15 AM by **Lupita Murillo**

# RICO funds help fund Southern Arizona law enforcement agencies

TUCSON - Fighting crime is not cheap. In these challenging economic times, it can be difficult. That's why RICO funds or forfeited racketeering money comes in handy.

The Pima County Sheriff's Department purchased a state of the art equipped helicopter that criminals helped buy.

Rico funds paid 40% of the $3.6 million tab.

That's money seized from criminals such as the Dominguez Drug Trafficking organization.

In 2004, police seized $10 million in property, vehicles and cash. Also in this case, criminals funded their own investigation. Tom Rankin heads the Asset Forfeiture Unit for the Pima County Attorney's office.

"Rico funds were used during the investigation to fund the wire tap itself, and at one point in the investigation to provide witness protection services. There were some witnesses that were threatened and needed to be hidden," he says.

RICO brings in between $800,000 to $1,000,000 a year for the Sheriff's Dept.

Bureau Chief Chris Radtke says, "When the economy tanked and we lost a good part of our budget, we could absolutely not survive without RICO."

RICO generates enough cash for the Sheriff's Department to equip deputies with the necessary tools such as tasers and bullet proof vests to protect themselves and the public.

"We had a situation several years ago when a deputy was shot point blank in the chest. And without the body armor he most likely wouldn't be here and he's still working with us today," says Deputy Edward Curtain.

The patrol car and the equipment inside it, even the emergency lights all paid for by the criminals.

"RICO is not a continuing revenue stream that we can count on all the time, that's why we don't pay salaries with that money. It's used for equipment, training and building improvements," Bureau Chief Radtke says.

So the saying "crime doesn't pay" holds true for the criminals, but their loss is the public's gain. If you have a story you would like for us to look into email crimetrackers@kvoa.com



(http://ox-d.cordillera.tv/w/1.0
/rc?ts=1fHNpZD0xOTg2N3xyYWlkPTlmNWM1ZjdmLTQ2MDEtNDYyMi05MTU3LWE2MWQ5N

## COMMENTS

Case 2:15-cv-01386-DJH   Document 1-1   Filed 07/22/15   Page 54 of 72



Facebook social plugin

## MORE NEWS

### LOCAL



### ARIZONA



Case 2:15-cv-01386-DJH   Document 1-1   Filed 07/22/15   Page 55 of 72

Case 2:15-cv-01386-DJH   Document 1-1   Filed 07/22/15   Page 57 of 72

# Exhibit 13

**Bethany Jeffress**

| | |
|---|---|
| **From:** | Rheinheimer, Ed <ERheinheimer@cochise.az.gov> |
| **Sent:** | Wednesday, March 13, 2013 11:00 AM |
| **To:** | Kim MacEachern |
| **Subject:** | RE: RICO funds |

Kim,

All of my RICO funds are used to supplement the salaries of my employees and office operating expenses. This use of my RICO funds has become necessary to avoid furloughs and/or layoffs as the county has cut back on staffing due to budget cuts. It is also why it is not so easy for me to subsidize APAAC's obligations by assuming responsibility for reimbursing my employees for training expenses.

Please let me know if you have any questions.

Ed Rheinheimer
Cochise County Attorney

-----Original Message-----
From: Kim MacEachern [mailto:Kim.MacEachern@apaac.az.gov]
Sent: Wednesday, March 13, 2013 9:08 AM
To: Kimberly MacEachern (kmac1411@me.com)
Subject: RICO funds

ALL:

As you are aware, there is some criticism amongst the chattering classes regarding RICO funds. I am doing a survey as to the uses for which RICO funds are applied in your communities. If you could provide a listing with just general information about the various uses to me by close of business Friday, March 15, 2013, I would greatly appreciate it.

Thank you,

Kim MacEachern, Staff Attorney
APAAC
1951 W. Camelback Road, Suite 202
Phoenix, AZ 85015
602-542-7200
602-882-0313 (mobile)
602-274-4215 (fax)
http://apaac.az.gov

"Empowering AZ's prosecutors to administer justice and contribute to public safety through training and advocacy."

1

# Exhibit 14

96540

# APPLICATION

# ARIZONA DPS RICO FUNDS

Applications for RICO funding will be solicited semi-annually (April and October). Projects approved for funding will begin in July and January respectively. Divisions can present projects to the Funding Committee outside of these funding cycles if an urgent need is identified.

**Requesting Bureau:**          Criminal Investigations Division

**Project Title:**               Bomb Squad Unit   FY 2014

**Project Coordinator:**         Captain D. Lugo #4190 / Sgt. Jerry Diehl #3772

**Project Budget Coordinator:**  Mary Curfman

**Total Funds Requested:**       **351,826.00**   339,636

**Proposed Project:**   This is a direct law enforcement mission. The DPS Bomb Squad has been tasked with providing specialized assistance to all law enforcement agencies through out the State of Arizona.

The Bomb Squad is a specialty unit that provides a critical service to the citizens of the State of Arizona, as well as nationally. It is a primary responder to major incidents in this region of the United States, which includes our national border with Mexico. With the ever increasing violence and emerging threats of VBIEDs (Vehicle Borne Improvised Explosive Devices) and RCIEDs (Remote Controlled Improvised Explosive Devices) so close to the southern border of the United States, the role of the State Bomb Squad has become critically important.

The State Bomb Squad is one of only a dozen law enforcement agencies in the United States with ECM (Electronic Counter-Measures) capabilities and deployment responsibilities. In addition, it is also a member of the National Stabilization Program (STAB). There are only five of these special National Response Teams in the US, with a sixth to start up in the state of Washington. The Bomb Squad provides service to the AZDPS, as well as City, County, State, Federal Law Enforcement agencies, and the US Military. On average, the bomb squad supports at least 20 agencies each month. These services include:

* The render safe and removal of improvised explosive devices (IEDs)
* The render safe and removal of booby trap devices
* The destruction of energetic and hazardous materials (explosive and chemical)
* Post Blast Investigation of bombing crime scenes

Bomb Squad Budget
FY 2014
Page 2 of 6

*   Technical and tactical support to the DPS and other agency SWAT Teams
*   Assists DPS and other agencies with hostage rescues
*   Breaching and high-risk search warrant service
*   Security sweeps for dignitaries, special events, and Governor's Office

Another key role of the Bomb Squad is to provide training. Training is provided for civilians, all law enforcement agencies through the federal level and even other nations. Members of the Bomb Squad are certified instructors and able to provide training throughout the nation, as well as, the State of Arizona. Some examples of the Type of training the Bomb Squad provides are:

*   Bomb Threat Management/ Bomb Threat search techniques
*   Explosives Identification
*   Explosive Breaching
*   Booby Traps
*   Site Security/Threat Level Assessments
*   Post Blast Investigations
*   Weapons of Mass Destruction
*   Terrorism and Suicide/Homicide Bombers
*   Domestic Preparedness
*   SWAT/EOD Integration
*   National EOD Training and Equipment Requirements

The State Bomb Squad is not an appropriated funded unit, and relies solely on RICO funding to continue performing its high-risk and ever expanding mission. The safety of the technicians and the public they are sworn to protect depend on it. During calls for service and training, our equipment and basic supplies are used. These items have to be serviced or replaced on a continual basis as they wear out or become unserviceable. In addition, advances in technology have proven to greatly increase the safety of our technicians while dealing with hazardous devices. Without RICO funding, the Bomb Squad would not be able to maintain and upgrade specialized tools and equipment necessary to perform our duties. In the past year, the Bomb Squad responded to over 450 requests for service. Over 200 of those requests were related to explosives/energetic materials and/or hazardous devices and resulted in the disposal of more than 3,500 lbs of explosives/energetic materials.

Vehicle #06410 is a 2006 Ford 2 wheel drive ¾ ton pickup. It is old, has high mileage (over 110K) and is inadequate for service in the Bomb Squad. It cannot hold all the minimum equipment necessary for a member of the Bomb Squad to respond to an emergency call and its age and mileage is at a point where the long range serviceability is in question. In addition, it cannot adequately pull the Regional Response Trailer needed for Bomb Calls. This being the case, the Bomb Squad needs to purchase an additional Daily Response Vehicle. These Response Vehicles are specialty vehicles that are equipped specifically for Bomb Squad personnel. They are long lasting, rugged vehicles, able to respond to any location. The trucks will be equipped with a covered utility bed, capable of securing all the essential emergency equipment needed by Bomb Squad technicians to perform their duties statewide.

Bomb Squad Budget
FY 2014
Page 3 of 6

The Bomb Squad is in need of funding to pay for repairs and upgrades to Bomb Squad specific vehicles. When vehicles are replaced, or the storage containers and alarming systems inside the vehicle themselves become no longer serviceable, it becomes necessary to repair or even replace these items. In addition, we must pay for tools needed for explosive dismantling, x-ray interpretation, office supplies and equipment. The Bomb Squad must also purchase and maintain explosives/munitions and related items in order to destroy, dismantle and render safe other explosive devices. Most of these particular items are "one use only" and must be replaced immediately after use.

The makeup, design, difficulty, and complexity of Improvised Explosive Devices (IEDs) are changing quickly and are not always the same. Having the ability to access databases via air cards is paramount to personnel's safety. The Bomb Squad is equipped with five wireless air cards so our Bomb Squad technicians are able to access national as well as international databases from all locations in the state in order to safely perform their duties. This request includes the expense of "access tokens" for personnel which are needed to access secure databases.

Robots are a very important tool for the Bomb Squad and have proven on numerous occasions to save lives. By keeping danger at a distance, our bomb technicians are able to work on hazardous devices that would otherwise require them to go "hands on". In order to maintain our proficiency with the robots, we must train and use them continuously. Continued use through operations and training causes parts to wear, break, or otherwise become unserviceable. Maintaining and upgrading our robots protects lives and our investment. Replacement value of our current 5 robots on the Bomb Squad is well over $1,600,000. In order to keep up with current threats we must upgrade our equipment to further enhance the performance of our robots. All of these upgrades enhance the Bomb Squad's ability to counter advanced IEDs and VBIEDs. The Bomb Squad is requesting funds to maintain and upgrade our robots and related equipment.

In order for bomb technicians to maintain their certification through the FBI with the coordinated efforts of the National Bomb Squad Commanders Advisory Board, and the Federal Emergency Management Administration, they are required to perform job specific training each year. This mandatory training must include training on tasks related to nearly all of the services performed by the Bomb Squad that are listed at the bottom of page 1 of this document. Moreover, training is also needed in the areas of hazardous materials and radiation, electronics, x-ray use and interpretation, loading and firing of energetic materials/tools that focus this energy, numerous specialty tools ranging from delicate cutting to heavy robotic vehicle usage, and much more. Funding will be used to pay for current Bomb Squad members training, along with training needed for any new members. It will also pay for the technicians to attend other certification training, both in and out of state (the bomb technicians must have a minimum of 250 hours of EOD related training per the federal guidelines. This does not include the training each technician must attend to maintain SWAT standards, training required by the Bomb Squad, or minimum annual training required by DPS). This funding includes the cost to provide basic training for two new bomb technicians to be sent to the Hazardous Devices Basic School, in

Bomb Squad Budget
FY 2014
Page 4 of 6

Huntsville, Alabama this fiscal year. It is imperative we receive travel and training funding to send two technicians to any openings they may have this year.

Currently, the Bomb Squad has two vacant positions. In addition, two more bomb technicians will be retiring during this fiscal year raising our vacancies to four. Personnel are working long hours to respond to all calls for service, 24 hours a day – 7 days a week. With vacant positions, our current full-time and part-time bomb technicians are working overtime which is being paid or they adjust out time if possible. Our personnel have done everything possible to contain overtime expenditures. Funding overtime becomes especially critical to the part-time personnel. The overtime funds allow us to reduce the adverse impact on their full-time units which relies on them too. Funding of overtime and ERE costs is critical, as no other funding source is available to pay this cost.

### Proposed Budget:
**The proposed solution would be to provide funding for the Bomb Squad to obtain the necessary equipment, training and overtime funds. This would improve the operational and safety aspects of the Bomb Squad in the face of the current threat and the ongoing effort to reduce terrorism and street crimes. Our proposed solution is as follows:**

### *OVERTIME*

| | |
|---|---|
| 15 hours / 10 man Bomb Squad / month = $10,803. per mo w/ERE x 12 months = | 129,636.00 |

### *EQUIPMENT*

| | |
|---|---|
| One EOD Bomb Squad Response Vehicle, (1 Ton, Diesel, 4X4, Crew Cab Pickup, with a Utility-Bed and related equipment.) to replace vehicle #06410 | $80,000 |
| Two Allen Vanguard EOD 9 Bomb Suits | $50,000 |
| Updated Robot equipment/Repairs, general maintenance | $10,000 |
| Golden Engineering XR3 X-Ray Generator and charging system | $5,000 |
| Equipment: | $145,000 |

Bomb Squad Budget
FY 2014
Page 5 of 6

## TRAVEL & TRAINING

For new technicians to be sent to basic school and for current technicians to be able to meet basic minimum Federal training requirements, overnight call-outs, in-state/out of state travel for training. Specific courses include but are not limited to: Explosive Breaching, Advanced Explosive Destruction Techniques, Advanced Electronics, Advanced IED Render Safe Procedures, Post Blast, WMD/CBRNE, PBIED and VBIED courses.

**Travel and Training:** $35,000

## OTHER OPERATING

These items are vital to the safe performance of our bomb technician's duties, and are required to meet and maintain a minimum continuous ready status for the Special Operations Unit

**OPERATING COSTS**

The DPS Bomb Squad is a stand-alone Unit and not supported administratively by any other DPS components. Not only does the Bomb Squad require daily administrative supplies, but it also requires specialized consumables to be used during a tactical response. Supplies include but are not limited to tools, replacement parts, specialized batteries, specialized equipment, and explosives.

**Vehicle modifications:**

| | |
|---|---|
| Regional Response Vehicle/trailer upkeep and repairs, new alarm systems, new vehicle explosive bunkers, generator upgrade | $ 10,000 |
| IED/Explosive Tools (new/replacement, specialized items/devices), to include Frag Bags | $10,000 |
| Sgt's Cell Phone / (5) Aircards<br>Technician's cell phones, Sergeant's Blackberry, & Aircards. | $ 6,000 |
| Communications Tokens | $ 1,200 |
| X-ray intensifying screens and batteries | $ 4,000 |
| Explosives / Munitions and related items | $ 6,000 |
| Computers, software, instructional aids, office and other supplies/equipment maintenance and miscellaneous items. | $ 5,000 |

**Operating Cost:** $ 42,200
30,000

Bomb Squad Budget
FY 2014
Page 6 of 6

| | | |
|---|---|---|
| Personal Services / OT | $ 129,636 | |
| Equipment / Vehicles | $ 145,000 | |
| Travel and Training | $ 35,000 | |
| Other Operating | $ 42,200 | 30,000 |
| Total | $ 351,836 | 339,636 |

# Exhibit 15

99220

# APPLICATION

## ARIZONA DPS RICO FUNDS

Applications for RICO funding will be solicited semi-annually (April and October). Projects approved for funding will begin in July and January respectively. Divisions can present projects to the Funding Committee outside of these funding cycles if an urgent need is identified.

| | |
|---|---|
| **Requesting Bureau:** | Investigation Bureau |
| **Project Title:** | S.W.A.T. Team FY2014 |
| **Project Coordinator:** | Captain Dan Lugo, #4190 |
| **Project Budget Coordinator:** | Mary Curfman |
| **Total Funds Requested:** | $438,930  276,210 |

**Proposed Project: This is a direct law enforcement mission. The DPS S.W.A.T. Team has been tasked with providing specialized tactical assistance to all law enforcement agencies through out the State of Arizona.**

In its role as mandated by Arizona Revised Statutes, Title 41, the Arizona Department of Public Safety (DPS) provides specialized law enforcement assistance and training to law enforcement agencies within the state. The Special Weapons and Tactics team (S.W.A.T.) provides such services and training to the various law enforcement agencies.

DPS S.W.A.T. is not an appropriated funded unit, and relies on RICO funding in order to continue performing its high-risk mission. The safety of our officers and the public they are sworn to protect depend on it. During calls for service and training our equipment and basic supplies are used and must be serviced or replaced on a continual basis. In addition to the problem of aging equipment, advances in technology have proven to greatly increase the safety of the S.W.A.T. operators while dealing with hazardous and life threatening situations. Without RICO funding, S.W.A.T. would not be able to maintain and replace specialized tools and equipment necessary to perform their duties as S.W.A.T. operators.

The S.W.A.T. team provides a variety of operational, technical, specialized support, and training to Federal, State, County, and City law enforcement agencies. The support includes a rapid response with highly trained tactical and negotiations support in potentially life threatening situations. This requires specialized skills, tactics, and equipment to isolate, control, and resolve the incident in a manner consistent with escalation of force policies.

**Proposed Budget:** The proposed solution would be to provide funding for the S.W.A.T. Team to obtain the necessary equipment, training and overtime funds. This would improve the operational and safety aspects of the S.W.A.T. Unit in the face of the current threats and the ongoing effort to reduce terrorism and street crimes. Our proposed solution is as follows:

## OVERTIME:

DPS S.W.A.T. is on call 24 hours a day -7 days a week. The majorities of officers assigned to S.W.A.T. are part-time contingency team members and respond to S.W.A.T. calls in addition to performing their normal duties. Part-time members response to call outs is almost always on overtime status. In general, S.W.A.T. has little flexibility in adjusting these part-time member's hours due to the demands of their regular duties and primary assignments. RICO funds are used to pay for overtime of the part-time members of S.W.A.T. for missions throughout the state. RICO funded overtime is only used to pay full-time and part-time members when adjusting time off is impossible.

The S.W.A.T. team is constantly adjusting work schedules in order to complete its assignments. There are 13 full-time S.W.A.T. members in the S.W.A.T. District that have staggered their work schedules and the supervisors coordinate manpower to maintain minimum staffing for assignments. Full-time S.W.A.T. personnel have several other duties they are tasked with which include ARIZONA WANTED, Property and Evidence destruction transportation, high profile dignitary protection details, tactical training for DPS Units and other law enforcement agencies, de-briefing of previous operations for training issues, scheduling and instructing team training. This continues to cause a hardship in order to meet our minimum training hours.

The National Tactical Officer's Association (NTOA) has set recognized standards for S.W.A.T. teams. The training standard for full-time S.W.A.T. personnel is **at least 25% of the regular duty time which equals 10 hours per week,** and as a result of getting called out and then adjusting schedules to avoid overtime, our training has been cut short or in some instances been cancelled. Part-time minimum standard training commitments as set forth by the NTOA amounts to **16 hours per month, or 8 hours every other week.**

The calls S.W.A.T. responds to are complex in that no two calls are identical in time needed and number of specialized personnel to accomplish a peaceful resolution. Over the last six fiscal years S.W.A.T. has responded to an average of 107.6 calls a year, which averages to 8.9 calls per month. S.W.A.T. has taken steps to adjust overtime and coordinate budget issues with other available sources of funding. Any increase in number of callouts and/or duration of calls would increase the unit's overtime expenses. Funding of overtime and ERE costs is critical, as no other funding source is available to pay these liabilities.

The following is a typical response to S.W.A.T. callout for high-risk warrant service: On average when S.W.A.T. responds to a call-out it utilizes 20 specially trained officers. Of those 20, at least 40% of them are in/on overtime status. The averages S.W.A.T. call-out last approximately 6 hours. This equals at least 48 hours of overtime.

> Average S.W.A.T. Call-out
> 40% of 20 people =        8 people
> 8 people X 6 hours of OT =   48 hours
> 48 hours of OT =        $3,445 OT/ERE

S.W.A.T. is requesting Overtime and ERE to cover a minimum of 8 callouts a cycle.  Using the figures from above the average call out requires **$3,445**, in Overtime/ERE.

8 call outs X 48 hours of OT (8 X $3,445) = **$27,560 OT/ERE per Cycle**
12 Cycles X $27,560 =

$330,720    200,000

*This does not include the difference for sergeant's pay

## EQUIPMENT:

These are the items that are vital to the safe performance and enhance the current capabilities of S.W.A.T.

- **CELLULAR TELEPHONES – SMART PHONES**
  Request 4 Smart Phones for S.W.A.T. supervisors to allow them to communicate and send electronic correspondence during law enforcement missions.  This allows them to receive and send photos of locations and suspects while in the field.  This also gives the supervisors ability to immediately call out personnel and equipment needed for each mission.  S.W.A.T. requests funding to cover yearly service costs.  (4 Smart Phones @ $203.88 mo ea)

  **Twelve (12) months of Service for 4 Smart Phones assigned to S.W.A.T.**       $2500

- **SATELLITE PHONE**
  S.W.A.T. has one Satellite phone available for use when conducting rural operations and/or in the event they are deployed and regular land and/or cellular service is unavailable.

  **Twelve (12) months of Service (45.96 per month)**       $560   OK

- **AIRCARD**
  S.W.A.T. has 7 AIR Cards assigned for use in Mobile Data Computer (MDC).  This also allows the ability of SWAT to transfer larger amounts of data during law enforcement missions.  (Seven AIR Cards @ 39.99 each per month – $279.93 monthly charges)

  **Seven AIRCARDS @ Twelve (12) months of Service**       $3400

- **LAPTOP COMPUTER TOKENS**
  S.W.A.T. Team currently has seven Laptop Computer Tokens that allow them to access secure DPS databases while in the field on Missions.  IT requires they be replaced each year.

  **Seven Computer Tokens @ $300.00 per year.  (7 SWAT)**       $2100  not change's

- **CHEMICAL/IMPACT MUNITIONS/DIVERSIONARY DEVICES**
  S.W.A.T. currently has a multitude of expired or soon to be expired chemical, impact munitions and diversionary devices.  In the past, the Unit has purchased large lots of these munitions,

causing most of them to expire in the same year. The average shelf life of this type of munitions is 5 years. S.W.A.T. utilizes these munitions during various tactical situations, i.e. barricaded subjects, prison riots, and civil unrest situations. S.W.A.T. also routinely trains with these munitions to certify and maintain proficiency in its use. It is S.W.A.T. intention to purchase this type of munitions in smaller lots each year to minimize the quantities that expire and to create a rotating inventory. This will also allow for smaller amounts of funding being required each year, as opposed to a large allotment every five years.  These types of devices are consumable and cannot be reused.

**Various Chemical / Impact Munitions / Diversionary Devices**                $10,000


○ SPECIAL PURPOSE VEHICLE

S.W.A.T. tactical operators currently have one issued Polaris Razor, UTV type vehicle. The unit has on occasion borrowed these types of vehicles from other units during deployments and has seen the usefulness of having them for our use. The UTV's are extremely beneficial to gain access and move tactical resources during rural operations such as marijuana eradications, man hunts and border operations. The vehicles can be easily outfitted for our needs to include Infrared lighting for nighttime operations. The use of such vehicles will allow our unit to minimize the wear we put on our issued vehicles during these operations. S.W.A.T. request one additional Four Seat Polaris Razor and Trailer.

**Polaris Razor and trailer**                                                $24,000


○ MULTI PURPOSE COPIER

S.W.A.T. is currently using a seven year old copier. The copier jammed and malfunctions when making more than five copies. In the past six months, numerous service calls has been put in to service the unit. S.W.A.T. can benefit from a multi purpose copier, with wireless printing capabilities.

**Multi Purpose Copier**                                                     $5000


○ DEUS 3200 Controlled Descent Device

Crisis Negotiators have been tasked with missions related to suicidal individuals threatening to jump from a highway overpass into oncoming traffic, therefore posing an immediate threat of suicide, a hazardous threat to the safety of the motoring public, and the crisis negotiator. The harness manufactured by DEUS is designed to give SWAT the ability to secure the negotiator to a fixed object and provide a safe anchoring option, in the event the suicidal subject attempts to grab the negotiator or push the negotiator into oncoming traffic.

**(3) Harness and Rope**                                                     $4000


## TRAVEL/TRAINING:

NTOA standards and S.W.A.T. best practices require a minimum of 16 hours of training a month and attendance of an additional one week of training per year for part-time S.W.A.T. personnel. Full-Time officers are required to have more training.  The on going required training for all

operators and the initial training required for the new tactical officers, snipers, and negotiators require funding for travel and training.

In order to meet the mission requirements of S.W.A.T., travel/training funds are essential. S.W.A.T. provides service to the entire state of Arizona law enforcement community, including Federal agencies. To perform our duties safely and to maintain a high level of proficiency, S.W.A.T. members must train on a continuous basis. In order to do this, it requires S.W.A.T. personnel to travel throughout the state as well as outside the state. The unit has brought on ten new members who require additional training to become proficient in tactical operations.

Below are the classes and/or schools identified:

| Class | Registration / Lodging / Per Diem | Amount | In-State | Out-state |
|---|---|---|---|---|
| National Tactical Officer's Association Conference 2013 | $500 X 6 (7th free) $3000 + Per Diem $5700 | $8700 | | X |
| NTOA S.W.A.T. Commander Leadership | $675 + Per Diem $470 | $1200 | X | |
| Select-Fire Instructor Course | $600 x 2 $1200 + Per Diem $650 | $1850 | X | |
| Intermediate Sniper School | $400 x 4 $1600 + Per Diem $800 | $2400 | X | |
| Crises Negotiations CNU Conference 2013 | $300 x 3 $900 + Per Diem $600 | $1,500 | X | |

Total Amount   $15,650

Average Lodging and Per Diem for responding to calls for service:     $10,000

Travel and Training Requested:                                        $25,650

## OTHER OPERATING

### OPERATING COSTS
S.W.A.T. is a stand-alone Unit and not supported administratively by any other DPS components. Not only does S.W.A.T. require the daily administrative supplies such as copier toner and maintenance fees, but it also requires specialized consumables to be used during a tactical response. Supplies include but are not limited to tools, replacement parts, specialized batteries, range fees, gun repairs and gun parts.

Operating costs                                                      $31,000

| | | |
|---|---|---|
| Personal Services / OT | $330,720 | 220,000 |
| Travel/Training | $25,650 | |
| Other Operating (incl. training) | $31,000 | |
| Equipment | $51,560 | 19,560 |
| Total | $438,930 | $276,210 |